**E. Barbara UPPGREN, as Trustee for the next of kin of Robert A. Uppgren, deceased, Plaintiff,**

**v.**

**EXECUTIVE AVIATION SERVICES, INC., Loving Chevrolet Company (Loving Helicopters Division), and Hughes Tool Company (Aircraft Division), Defendants.**

**No. 4–69 Civ. 98.**

United States District Court
D. Minnesota,
Fourth Division.

Sept. 26, 1969.

James B. Vessey, Dorsey, Marquart, Windhorst, West & Halladay, Minneapolis, Minn., for plaintiff.

Altman, Geraghty, Leonard & Mulally, by J. H. Geraghty, St. Paul, Minn., for defendant Loving Chevrolet Co.

Faegre & Benson, by G. Alan Cunningham, Minneapolis, Minn., appeared for defendant Hughes Tool Co.

NEVILLE, District Judge.

Confronting the court here is the old and familiar problem of an alleged interstate tort and claimed in personam jurisdiction over a foreign corporation by substituted service effected under the Minnestota so-called "one act" statute, subjecting a foreign corporation to the jurisdiction of the courts of Minnesota "* * * if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, * * *." Minn.Stat. § 303.13 Subd. 1(3).

Robert A. Uppgren, a Minnesota resident, was killed on May 12, 1967 when a helicopter in which he was a passenger crashed in northern Minnesota. Plaintiff was duly appointed as trustee by the Minnesota State Court to prosecute an action for his wrongful death. Defendants are the Hughes Tool Co., the manufacturer of the helicopter, a Texas corporation with its principal place of business in California; Loving Chevrolet Co. (Loving), a Maryland corporation with its principal place of business in Maryland, a former distributor of Hughes' helicopters who sold the alleged defective helicopter to the United States Department of Interior, decedent's employer; and Executive Aviation Services, Inc., a Maryland corporation with its principal place of business in Maryland, who acquired Loving's helicopter business sometime in March or April of 1967. Plaintiff asserts claims based on negligence and breach of implied warranty. Subject matter jurisdiction of this court is clear insofar as diversity of citizenship is concerned and the alleged amount in controversy which is in excess of $10,000. The question here involved is in personam jurisdiction. Defendant Loving was served under the Minnesota "one act" statute by delivery of process to the Minnesota Secretary of State and now moves to quash such service of summons.

The case presents a classical attempt to bring into this jurisdiction a foreign corporation based on the naked and sole fact that an alleged tort was committed in Minnesota. No contacts of any kind can be said to have existed as to defendant Loving with or within the State of Minnesota other than the commission of the final part of an act comprising a tort. The court is faced with the situation not answered in the well reasoned, meticulously written opinion of Aftanase v. Economy Baler Co., 343 F.2d 187 (8th Cir. 1965), where the court it would seem breathed a sigh of relief in stating:

"* * * We thus may not be confronted, factually, with a strict 'single-act' situation such as where an isolated offending product is the only contact between the defendant and the forum state. And we thus are not propelled into the very center of the controversial area of pure single act interstate situations where courts, on the constitutional issue, appear still to reach varying results. * * *" 343 F.2d at 189.

In the case at bar the court unfortunately is "propelled into the very center of the controversial area" and is unable to find any concrete or authoritative guidance from the decided cases in the Eighth Circuit.

Defendant Loving, a Maryland corporation, was at times here important, in the business of selling new and used automobiles. Its principal, and so far as appears here its only, place of business is in Maryland. From 1965 until sometime in 1967, in addition to the automobile business it engaged in the business of selling helicopters manufactured by defendant Hughes Tool Co. It is undisputed that Loving has never advertised, conducted any sales campaign, located any officer, agent, salesman, employee or office in Minnesota. It has never solicited business by mail, telephone or otherwise in the State and has never entered into any contract or other significant legal relationship with, nor made any sales to, any resident of Minnesota.

The helicopter in question was sold to the United States by a contract negotiated in Washington, D. C., or Maryland, and delivery was there made. Any connection with Minnesota was thus an isolated instance at best.

The only possible significant contact with the State of Minnesota is the rather fortuitous circumstance that decedent was killed while riding in Minnesota in the helicopter sold some time prior by Loving to decedent's employer, the United States of America and apparently more recently repaired in Maryland by Loving. The quantity of contacts with Minnesota is clearly less than substantial. The quality, as well as the fact, of the contact with Minnesota is also fortuitous, the connection being the claims of alleged breach of warranty and negligence. While the fact of injury, or in this case the fact of death, is an essential element of the plaintiff's claim, the place of injury is relevant only in that the alleged tort was not completed until the alleged negligence caused damage or injury; for without this latter element and until such occurred no tort had been committed. As often stated, mere negligence "in the air" is not a tort and does not become actionable until the force of the wrongful conduct impinges on a person.

When the only significant contact present is the fortuitous circumstance of injury within a state's borders, it is incumbent upon the court to scrutinize the facts closely to insure that the assertion of in personam jurisdiction over defendant is consistent with due process.

A determination as to whether a federal court has in personam jurisdiction over a foreign corporation in a diversity action raises two separate issues. Aftanase v. Economy Baler Co., 343 F.2d 187 (8th Cir. 1965); Williams v. Connolly, 227 F.Supp. 539 (D.Minn.1964). First, does the local statute as construed by the courts of the pertinent state subject the foreign corporation to in personam jurisdiction under the circumstances of the case? Second, if the forum has attempted to exercise in personam jurisdiction, does such action comport with the due process requirements of the 14th Amendment of the United States Constitution?

The Supreme Court of Minnesota has issued a number of opinions outlining the limits of its jurisdictional reach for foreign corporations under Minn.Stat. § 303.13 Subd. 1(3). In the *Aftanase* case, the Court of Appeals discussed five of the principal cases in which the Minnesota Supreme Court has held that in personam jurisdiction over the defendant was accomplished, holding such result was not violative of due process. *Aftanase*, 343 F.2d at 191–92. The five cases are Beck v. Spindler, 256 Minn. 543, 99 N.W.2d 670 (1959); Atkins v. Jones & Laughlin Steel Corp., 258 Minn. 571, 104 N.W.2d 888 (1960); Dahlberg Co. v. Western Hearing Aid Center, Ltd., 259 Minn. 330, 107 N.W.2d 381, cert. denied, 366 U.S. 961, 81 S.Ct. 1921, 6 L.Ed.2d 1253 (1961); Adamek v. Michigan Door Co., 260 Minn. 54, 108 N.W.2d 607 (1961); Ehlers v. United States Heating & Cooling Mfg. Corp., 267 Minn. 56, 124 N.W.2d 824 (1963). *But see*, Fourth Northwestern Nat'l Bank v. Hilson Industries, Inc., 264 Minn. 110, 117 N.W.2d 732 (1962). The *Aftanase* court also reviewed at length and with an analytical, scholarly approach the various United States District Court of Minnesota decisions involving the Minnesota "one act" statute.

Applying the principles set forth in these cases, it would appear that if the present case were before the Minnesota Supreme Court, that tribunal might well and very likely would hold that the facts here warrant application of the "one act" statute to Loving and that in personam jurisdiction secured by service pursuant thereto is not violative of due process. *Ehlers* involved an allegedly defective boiler which caused a fire. Third party complaints were served under the "one act" statute against the foreign corporation who manufactured the boiler which was sold to a second foreign corporation and then re-sold to a third foreign corporation with offices in

Chicago, which latter corporation re-sold the boiler to a Minnesota corporation which installed it in plaintiff's building. The court justified upholding the validity of service of process because the product was manufactured for use by the general public. "It is not contended that the area of foreseeable use of the product was so limited as to exclude the State of Minnesota." The item was a mass-production unit intended for nationwide use and the purchase from a Chicago distributor by a Minnesota buyer "would seem reasonably to have been anticipated by the manufacturer."

*Atkins* involved an injury sustained by a truck driver due to alleged negligent packaging of a product. The foreign distributor corporation which shipped the product f. o. b. New York was held to be within the reach of the Minnesota statute. The court also held that a manufacturer "is liable to an ultimate user of his product or to others who may reasonably be expected to be in the vicinity of its probable use for injuries arising from his negligence in the manufacture" that the place of the tort is where the last event, that is, the injury to the plaintiff, takes place; that if the injury occurred in Minnesota, the tort then is committed "in whole or in part" in Minnesota even though the "tortious act" occurred outside the State; and that the general policy underlying the statute "is to permit a Minnesota citizen injured here by the wrongful act of a foreign corporation to seek recompense therefor in our courts." Thus according to the Minnesota Supreme Court if a Minnesota resident is injured in Minnesota, the "one act" statute applies without any further showing and sufficient jurisdictional basis exists upon which Minnesota can exercise in personam jurisdiction over defendant and still comport with due process requirements.

■ Although the Minnesota Supreme Court quite apparently would apply the "one act" statute in the present case, it is the established rule that the issue as to whether due process require-

ments have been satisfied, so far as jurisdiction over a foreign corporation is concerned, is a question of federal law. *Aftanase*, 343 F.2d at 189–190. It is the duty of this court, therefore, to make an independent inquiry and determination on the due process issue. The Minnesota decisions, so far as they bear upon due process under the 14th Amendment, are of weight but they are not binding on a federal court. *Aftanase*, 343 F.2d at 193 (cases cited).

In *Aftanase* the Court of Appeals for the Eighth Circuit discussed the well known and frequently cited United States Supreme Court cases concerning the limitations of due process on the assertion of in personam jurisdiction over foreign corporations. The court cited and discussed International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); Perkins v. Benquet Consol. Mining Co., 342 U.S. 437, 72 S. Ct. 413, 96 L.Ed. 485 (1952); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958). The *Aftanase* court then synthesized from these cases the primary factors to be considered in determining whether due process has been satisfied in any particular case: (1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action with these contacts; (4) the interest of the forum state; and (5) convenience of the parties.

Plaintiff and defendant Hughes Tool Co. in opposing Loving's motion to quash service argue that the single fact that the product sold by Loving was present in Minnesota and caused injury therein to a Minnesota resident is sufficient to confer upon this court in personam jurisdiction consistent with due process. Reliance is placed on the landmark case of Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d

432, 176 N.E.2d 761 (1961) and its progeny. The *Gray* case represents one of the most far reaching constitutionally permissible extentions of in personam jurisdiction over a foreign corporation. In *Gray* an Illinois resident was injured by an explosion of a water heater manufactured by a foreign corporation which had been sold to a "middleman" foreign corporation. The manufacturer claimed that it did no business in Illinois and that the state court's exercise of in personam jurisdiction pursuant to service effected under the Illinois long arm statute was violative of due process. The record did not disclose whether the defendant had done any business in Illinois other than the manufacturing of a product out of state which was incorporated into a hot water heater which in the course of commerce was sold to an Illinois consumer. The Illinois Supreme Court in reversing a lower court judgment held that the Illinois courts had valid in personam jurisdiction over the defendant. The court discussed the trend toward expanding state jurisdiction over non-residents referred to in McGee v. International Life Ins. Co., *supra*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957), but went on to indicate that it was cognizant of the warning in Hanson v. Denckla, 357 U.S. 235, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958) that:

"* * * it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." 357 U.S. at 251, 78 S.Ct. at 1238.

The Illinois court then addressed itself to the issue of due process in light of the specific facts before them.

"In the case at bar defendant does not claim that the present use of its product in Illinois is an *isolated instance*. While the record does not disclose the volume of Titan's [defendant manufacturer] business or the territory in which appliances incorporating its valves are marketed, it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in *substantial use and consumption* in this State. To the extent that its business may be directly affected by transactions occurring here it enjoys the *benefits* from the laws of this State, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves. Where the alleged liability arises, as in this case, from the manufacture of products presumably *sold in contemplation of use here*, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State. [Emphasis added] 22 Ill.2d at 441, 176 N.E.2d at 766.

Applying these criteria to the instant case and assuming that the standards set forth properly comply with requisites of due process, this court, though in some doubt, believes it a proper resolution of the due process issue to decide against plaintiff and in favor of defendant Loving. The above quotation distinguishes *Gray* from the case at bar and indicates the inapplicability of the many cases where the defendant is a mass producer and knows or reasonably should foresee or anticipate that its product will be sold in or come to rest in a particular state or perhaps in many states.

Though the court has no direct evidence as to the number of helicopters sold by defendant during the period 1965–67, it is reasonable to assume that

the number could not have been large. The product is expensive and supply and demand is limited. Under these circumstances, the use of the alleged defective product in Minnesota was an "isolated instance," even conceding the mobile nature of the product. *See* Jack O'Donnell Chevrolet, Inc. v. Shankles, 276 F.Supp. 998, 1003 (N.D.Ill.1967). Certainly defendant's commercial transactions did not result in "substantial use and consumption" in the forum state. It has in no way been shown that Loving has benefited from the protection which Minnesota would afford if it or a related distributor had been marketing its products in this state, or even selling to one whom it was known would bring the product into the State.

It is arguable, of course, that considering the mobile nature of the product and the fact that the helicopter in question was sold to the United States Government, Loving could reasonably expect that its negligence would have consequences in almost any of the 50 states including Minnesota. It is important to note, however, that the foreseeable use test applied by the Illinois court purports to require that the use and consumption of the defendant's product in the forum state be "substantial." 22 Ill.2d at 441, 176 N.E.2d at 766. If such use is substantial, it can safely be presumed that defendant foresaw that his products would be used in the forum state and thus he has enjoyed some meaningful benefits from protection afforded to the marketing of his product by the law of the forum. Under these circumstances, foreseeable use coupled with the fact of injury in the state might be sufficient basis to render defendant amenable to in personam jurisdiction. In the instant case, however, though Loving might reasonably foresee use of its product in interstate commerce, it is doubtful that it could foresee substantial use within the State of Minnesota.

As a practical matter if jurisdiction exists in this case, in the absence of limitation, it will render every foreign defendant whose product allegedly causes injury in the forum state amenable to in personam jurisdiction in that state and make it "per se amenable." Lengthy citation or detailed discussion of each of the many cases cited in opposition to Loving's motion will not be undertaken. Suffice it to say that this court reads none of these cases to hold that any foreign manufacturer or distributor whose product reaches the forum state and causes injury therein, *in the absence of any additional facts*, is amenable to in personam jurisdiction in that state consistent with due process. Each case which upheld jurisdiction exhibited significant additional factors.

In many cases application of a "one act" statute does not produce unconstitutional results because the alleged defective product is mass-produced and in extensive commercial use in the forum state. Usually the foreign corporate defendant derives substantial revenue from goods used or consumed in the state or at least expects or should reasonably expect that his conduct will have consequences in the state and he derives substantial revenue from interstate or international commerce. When these additional factors are not clearly present, however, as in the instant case, the per se amenable rule urged by plaintiff and Hughes Tool can produce consequences which offend the "traditional notions of fair play and substantial justice." See International Shoe Co. v. Washington, *supra*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

A per se amenable approach effectively discounts the due process limitations carefully developed by the Supreme Court over the years. Under this approach any foreign corporate defendant, regardless of whether it sold only one piece of inventory or was in business for only one day, would be amenable to suit and an in personam judgment in any state where his product came to rest and caused injury. So, a Florida corporation in the business of selling bottled soft drinks at a roadside stand would be amenable to suit in the state of Alaska

if a customer bought a defective bottle in Florida, carried the same to Alaska, gave it to his child who upon opening it and consuming the same became seriously ill. It seems clear to this court that Alaska could not exercise in personam jurisdiction over the Florida defendant consistent with due process, regardless of whether service was effected pursuant to a one act statute identical to that in Minnesota and despite the fact that the injury occurred in the forum state.

■■ It is the established rule that whether the particular type of activity conducted by defendant is adequate to satisfy the due process requirement of minimum contacts depends upon the facts of the particular case. Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952). Application of a per se amenable rule requires no analysis of the peculiar facts of each case. This court does not believe that the due process question can be answered by applying a mechanical formula or rule of thumb, but only by ascertaining what is fair and reasonable under the circumstances. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Accordingly, this court believes that the so-called "per se amenable" formula is an inadequate test of due process and the court expressly declines to accept or apply it. Some courts and commentators have suggested that questions of due process may turn on whether defendant is a manufacturer or retailer. See Oliver v. American Motors Corp., 70 Wash. 2d 875, 425 P.2d 647 (1967); 66 Colum. L.Rev. 199, 207 (1966); 73 Harv.L.Rev. 909, 929–30; D. Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963, U.Ill.L. F. 533, 556–58. The manufacturer-retailer approach, if valid, is inconclusive when applied as a test of due process to the facts in the instant case.

In summary, application of the foregoing in the context of the due process criteria set forth in *Aftanase* suggests the following concerning the case at bar: (1) The only significant contact with the forum state is the fact that a product sold by Loving came to rest in Minnesota allegedly causing the fatal injury of a Minnesota resident; (2) While the helicopter in question was powerful and contained potent possibilities of harm if negligently designed or manufactured, Loving engaged in no "voluntary, affirmative economic activity of substance" vis a vis the plaintiff or the State of Minnesota. The fact of injury in the State was completely fortuitous. The presence of the defective product in Minnesota was an isolated instance, even conceding the mobile nature of the helicopter. It cannot be said that the Loving commercial helicopter business resulted in substantial use and consumption of defendant's products in Minnesota. It has not been persuasively shown that Loving has benefited in any way from the protection which Minnesota law would afford if Loving had been marketing its products in this State; (3) The only connection between the cause of action and the contact is the fortuitous circumstance of presence of the alleged defective product in the state causing injury to plaintiff within the state; (4) Minnesota of course does have a significant interest in providing a forum for any injured resident. This interest alone however cannot control; (5) The final consideration, convenience of the parties, militates against the maintenance of the suit in Minnesota, having in mind that defendant is situate many, many miles away and that its records, witnesses and office is in Maryland, although it is recognized that plaintiff undoubtedly will have some witnesses in Minnesota.

■ It is plaintiff's burden of proof to demonstrate that in personam jurisdiction secured by service under the Minnesota "one act" statute is consonant with due process. Russell v. New Amsterdam Casualty Co., 325 F.2d 996 (8th Cir. 1964); Williams v. Connolly, 227 F.Supp. 539, 550 (D.Minn.1964). It is the opinion of this court that plaintiff

has not sustained this burden. Considering all of the factors discussed herein, the court finds that Loving is not amenable to in personam jurisdiction in Minnesota. A separate order quashing service of process has been entered.