122 N.J. Super. 1 (1972)
298 A.2d 298
JOSEPH CERTISIMO AND HARRIET CERTISIMO, PLAINTIFFS,
v.
HEIDELBERG COMPANY, A COMPANY ESTABLISHED IN WEST GERMANY, AND HEIDELBERG EASTERN, INC., A CORPORATION OF THE STATE OF DELAWARE, DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
HEIDELBERG DRUCKMASCHINEN AKTIENGESSELLSCHAFT, A COMPANY ESTABLISHED IN WEST GERMANY, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 6, 1972.
*3 Mr. Rowland V. Lucid, Jr. for plaintiffs (Messrs. Scerbo, Glickman & Kobin, attorneys).
Mr. Donald S. McCord, Jr. for defendants and third-party plaintiffs Heidelberg Eastern, Inc. (Messrs. O'Donnell, Leary & D'Ambrosio, attorneys).
Mr. Peter E. Henry for third-party defendant (Messrs. Crummy, O'Neal, Del Deo & Dolan, attorneys).
BYRNE, A.J.S.C.
This is a motion by the third-party defendant in this action, Heidelberger Druckmaschinen Aktiengessellschaft (hereinafter HDAG) to dismiss the third-party complaint against it due to insufficiency of process. Defendant and third-party plaintiff Heidelberg Eastern, Inc., a Delaware corporation, sought to serve HDAG, the third-party defendant, under R. 4:4-4(c)(1), which provides in part that:
If it appears by affidavit of plaintiff's attorney or of any person having knowledge of the facts that after diligent inquiry and effort personal service cannot be made upon any of the foregoing and if the corporation is a foreign corporation, then, consistent with due process of law, service may be made by mailing, by registered or certified mail, return receipt requested, a copy of the summons and complaint to a registered agent for service, or to its principal place of business, or to its registered office.
HDAG argues that it has no contacts with the forum state and that therefore service by mailing would not be "consistent with due process of law." Heidelberg Eastern, Inc. responds that HDAG does indeed have sufficient minimal contacts with the State of New Jersey to employ the "long-arm rule" by reason of the injury sustained by plaintiff.
A review of the undisputed facts shows that most of the bases for jurisdiction under the long-arm statutes which have been developed since International Shoe v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, in 1945 are not present *4 in this case. Plaintiff in this case suffered injury to his hands while operating a printing press manufactured by HDAG and distributed by Heidelberg Eastern, Inc. The injury was allegedly caused by a press which was "negligently, carelessly and recklessly designed, constructed, manufactured, inspected and maintained."
The press was manufactured by HDAG, a West German corporation which manufactures and sells Heidelberg presses in Germany to companies doing business in a number of countries throughout the World. All manufacturing and selling activities by HDAG are carried on outside the United States. Title to the printing presses and parts which are to be sold in the United States passes in Germany to Heidelberg Eastern, a corporation which then imports the presses into the United States. Heidelberg Eastern is not an agent of HDAG. HDAG owns no financial interest in any distributor of its products; nor does it supervise, control or otherwise oversee the business operations of its distributors in the United States. Heidelberg Eastern sold the press to plaintiff's employer, Compton Press, a New Jersey corporation.
HDAG states by affidavit that it does no business in the State of New Jersey, has never qualified to do business in New Jersey and has no office, place of business or personnel in the State of New Jersey or in the United States. HDAG neither owns nor controls any property in New Jersey. It does not ship its products to individuals or corporations located in New Jersey. It neither solicits business nor advertises its products in the State of New Jersey or in the United States. HDAG does not sell its products to customers in New Jersey, although it sells machines to Heidelberg Eastern; however, those transactions occur in West Germany.
In short, the only contact on which personal jurisdiction may be based in this case is the fact that a printing press sold to the third-party plaintiff with the obvious expectation that it would be resold in the United States eventually caused injury *5 to plaintiff in New Jersey. Third-party defendant claims that this is not even a "contact." Third-party plaintiffs argue that the single act is enough to support jurisdiction under R. 4:4-4(c)(1).
The narrow question to be determined is this: Does the sale and delivery of a product in a foreign nation by a foreign manufacturer to an American distributor with the obvious expectation that it will be sold in some state of the United States subject the foreign manufacturer to the personal jurisdiction of New Jersey's courts when the product causes injury to a New Jersey resident in New Jersey? More simply, is a finding of jurisdiction in such a situation "consistent with due process of law"?

I
Two United States Supreme Court cases must provide the origin for any response to this question. In International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) the Supreme Court held that:
* * * [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." [at 316, 66 S.Ct. at 158]
In International Shoe the minimum contacts of the foreign corporation consisted of salesmen within the state exhibiting samples of merchandise and soliciting orders from prospective buyers. Holding that such activities were systematic and continuous, the court found that the State of Washington may maintain suit in its own courts in conformity to the due process requirements of the Fourteenth Amendment. However, in McGee v. International Life Insurance Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the contacts with the State of California were not as great. There a resident of California purchased an *6 insurance policy from an Arizona company. The company was later taken over by defendant, a Texas company, which mailed a reinsurance certificate to the assured who, in turn, mailed his premiums to the defendant's Texas office. Neither the Arizona nor the Texas company ever had an office or agent in California, and the Texas company had never solicited or done any insurance business in California apart from issuing the policy sued upon. After the assured died, the beneficiary sued defendant in California, serving it by mail, and obtained a judgment which the Texas courts later refused to enforce. The Supreme Court held that the California court had jurisdiction and that its judgment was entitled to full faith and credit.
It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. [Citing cases]. The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. [355 U.S. at 223, 78 S.Ct. at 201; emphasis added]
Thus, the Supreme Court has set no firm and established guidelines for the states to follow, except the fact situations presented in International Shoe and McGee, supra, and requirements that suits not offend "traditional notions of fair play and substantial justice," or have a "substantial connection" with the state.
Partly because the Supreme Court has not set firmer guidelines, and partly due to the rapid recent development of the long-arm concept, it is difficult if not impossible in close situations to find determinative criteria to use in deciding if there is jurisdiction or lack thereof. Almost every case can be distinguished by a factor which has some bearing on the determination of whether minimum contacts do exist. Such distinctions must be closely considered, for although there can be no doubt that since International Shoe was decided in 1945 the personal jurisdiction of the states has been *7 expanding, and although New Jersey has limited itself only by the constitutional limit of long-arm service, Roland v. Modell's Shoppers World, 92 N.J. Super. 1 (App. Div. 1966), there is still some meaning to the concept of limited personal jurisdiction. As noted in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958):
* * * it is a mistake to assume that this trend [International Shoe] heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenience or distant litigation. They are a consequence of territorial limitations on the power of the respective States. [at 251, 78 S.Ct. at 1238]
Still, expansion of personal jurisdiction is the trend, and indeed a necessity, as other fields of the law also change. Especially pertinent to the case at hand is the statement in Gray v. American Radiator and Standard Sanitary Corp., 22 Ill.2d 432, 433, 176 N.E.2d 761, 766 (Sup. Ct. 1961) quoted in Hoagland v. Springer, 75 N.J. Super. 560, 568 (App. Div. 1962):
* * * jurisdictional concepts which may have been reasonable enough in a simple economy lose their relation to reality, and injustice rather than justice is promoted. Our unchanging principles of justice, whether procedural or substantive in nature, should be scrupulously observed by the courts. But the rules of law which grow and develop within those principles must do so in the light of the facts of economic life as it is lived today. Otherwise the need for adaptation may become so great that basic rights are sacrificed in the name of reform, and the principles themselves become impaired.

II
There are two major requirements which have emerged for determining the present outer limits of in personam jurisdiction: (1) defendant must take voluntary action calculated to have an effect in the forum state, Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and (2) the act of defendant or the consequence caused by defendant must have a substantial enough connection with *8 the forum state so that the exercise of jurisdiction over defendant does no violation to fundamental fairness. J.W. Sparks & Co. v. Gallos, 47 N.J. 295 (1966); Avdel Corp. v. Mecure, 58 N.J. 264 (1971). See also, 27 A.L.R.3d. 397 (1969), L.D. Reeder Contractors of Ariz. v. Higgins Industries, 265 F.2d 768 (9 Cir.1959), n. 12, quoting 47 Georgetown L.J. 342, 351-352 (1958).
To decide if the first requirement is met, two questions may be posed: (1) does HDAG act purposely to avail itself of the privilege of acting or causing a consequence in the forum state if it is only foreseeable that since the distributor is an American corporation, HDAG's products will be sold in one or some of the 50 states, and (2) does the fact that the distributor is not connected to HDAG, and therefore the product is only "indirectly introduced" into New Jersey, make the connection between HDAG and New Jersey too tenuous? There are two corollaries to this second question. (1) is the fact that there is no connection whatever between HDAG and New Jersey at all significant, and (2) are the benefits derived from the forum state by HDAG too far removed?

III
Defendant must take voluntary action calculated to have an effect in the forum state. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Clearly, however, if it is not foreseeable that the foreign party's actions will have an effect in the forum state, then there can be no "voluntary action calculated to have an effect in the forum state."
In the case at hand, HDAG could foresee that its product would be used in one or some of the states. Therefore, it is arguable that it was "foreseeable" that HDAG's product would end up in New Jersey. However, by the same reasoning, HDAG would, under this criterion, be amenable to suit in every state. Third-party plaintiff has in no way narrowed *9 the field by showing that Heidelberg Eastern did a substantial amount of its business in a particular locale and that HDAG knew of this restriction.
In Uppgren v. Executive Aviation Services, Inc., 304 F. Supp. 165 (D.C. Minn. 1969), the single contact with Minnesota was the malfunction of a helicopter which caused injury in Minnesota. As the court pointed out:
It is arguable, of course, that considering the mobile nature of the product and the fact that the helicopter in question was sold to the United States Government, Loving could reasonably expect that its negligence would have consequences in almost any of the 50 states including Minnesota. It is important to note, however, that the foreseeable use test applied by the Illinois court [in Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d. 432, 441, 176 N.E.2d 761, 766 (Sup. Ct. 1961)] purports to require that the use and consumption of the defendant's product in the forum state be "substantial." [at 170]
With this language the Uppgren court was distinguishing Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (Sup. Ct. 1961). In Gray, an Illinois resident was injured by an explosion of a water heater manufactured by a foreign corporation which had been sold to a "middleman" foreign corporation. The manufacturer claimed that it did no business in Illinois and that the state court's exercise of in personam jurisdiction pursuant to service effected under the Illinois long-arm statute was violative of due process. The record did not disclose whether defendant had done any business in Illinois other than the manufacturing of a product out-of-state which was incorporated into a hot water heater which in the course of commerce was sold to an Illinois consumer. The Illinois Supreme Court, in reversing a lower court judgment, held that the Illinois courts had valid in personam jurisdiction over defendant. Gray is very similar factually to the case at hand. The court in Uppgren distinguished away Gray by noting:
*10 While the record does not disclose the volume of Titan's [defendant manufacturer] business or the territory in which appliances incorporating its valves are marketed, it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in substantial use and consumption in this State. To the extent that its business may be directly affected by transactions occurring here it enjoys the benefits from the laws of this State, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves. Where the alleged liability arises, as in this case, from the manufacturer of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State. [22 Ill.2d at 441, 176 N.E. 2d at 766; emphasis added]
Heidelberg Eastern has not shown that it did a substantial amount of business in New Jersey. However, it is also unlike Uppgren in that HDAG could know with certainty that Heidelberg Eastern would be selling to some unlocated customers. Unlike Uppgren, when plaintiff sought to serve defendant because of the highly unforeseeable fact that the accident occurred in Minnesota, in this case and in Gray Radiator, the third-party defendant could foresee that the product would have to be sold in other states and, indeed, it is assumed, hoped that the market for its product would be widespread. Certainly, if the third-party defendant's products were being sold in all 50 states, that party would be under the jurisdiction of all 50 states. It seems fair to hold, therefore, that HDAG should be liable in as many states as its distributor succeeded in spreading HDAG's product. It may be assumed that HDAG would prefer as wide a market as possible. Thus, in what is admittedly an after-the-fact argument, it is contended that in as many states as the third-party defendant's product causes injury, the third-party defendant will be liable to suit. Thus, it may be argued that how foreseeable a contact is will be determined by where the torts actually extend to.
Does the fact that the distributor is not connected to HDAG and that, therefore, the product is only "indirectly *11 introduced" into New Jersey, make the connection between HDAG and New Jersey too tenuous?
On Gray, supra, the court stated:
* * * Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State.
With the increasing specialization of commercial activity and the growing inter-dependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from its laws is an indirect one, however, does not make it any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here. * * * [176 N.E.2d 761 at 766]
In Hoagland v. Springer, 75 N.J. Super. 560 (App. Div. 1962), significantly closer connections were shown between the manufacturer and the distributor such that the distributors were "integral spoke[s] in a wheel in which Engine [the manufacturer sought to be served] is the hub." 75 N.J. Super. 560 at 564. There the distributors were able to order parts directly from the manufacturer.
In Omstead v. Brader Heaters, Inc., 5 Wash. App. 258, 487 P.2d 234 (App. Ct. 1971), aff'd 80 Wash.2d 720, 497 P.2d 1310 (Sup. Ct. 1972), a case cited by third-party plaintiff Heidelberg Eastern, there was almost the same absence of contacts (other than the injury by the product) as there is here. However, in Omstead an agent for the Japanese manufacturer of pipes visited plaintiff's orchard in Washington to help plaintiff solve problems which could not be alleviated and which, eventually, by their failure to heat the orchard, caused the ruin of the crop. Be these facts as they may, however, the end result for the manufacturer is essentially the same in Gray, Hoagland, Omstead and in this case. But for the middleman, the manufacturer seeking to engage in the same volume of business in which he was engaged would have *12 had to set up an outright system of agents to distribute his product. The economic reality of the situation is that these distributors, in Hoagland, Omstead, as well as in the case at hand, provide the same service of distribution to the third-party defendant as if they were the manufacturers' agents. Perhaps for other legal purposes (e.g., to avoid future difficulties with federal and state tax laws and other legislation) Hoagland, supra, 75 N.J. Super. at 569, these distributors cannot be classified as agents. However, to prevent recovery by an injured plaintiff or third-party plaintiff because the manufacturer had no "contacts" in that it handled all transactions through a middleman-distributor, is to allow a legal technicality to subvert justice and economic reality in the worst sense.
The HDAG has received all the same benefit to be derived from having customers in the forum state as if it had sold directly to these customers. As noted in Hoagland,
To conclude otherwise [i.e., to not find jurisdiction] would, * * * permit [the manufacturer] to receive the fruits of its New Jersey activities without the attendant liabilities which should go with it. [75 N.J. Super. at 570]

IV
The act of defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over defendant reasonable. There are two facets to this question: First, then, is the need for a citizen of New Jersey injured here to be able to sue in New Jersey; and second, there must not be undue inconvenience to defendant.
The need for a citizen of New Jersey to be able to sue for injuries he sustains here is clear and weighty. New Jersey has pioneered in the field of products liability and in the endeavor to have the rights of all parties decided where constitutionally permissible in a single forum. If the concepts are to be utilized, the legal system must develop and maintain procedural mechanisms. Newmark v. Gimbel's Inc., 54 N.J. *13 585 (1969), in holding that strict liability to the injured consumer does not leave the dealer without remedy, the court said:
He has an action over against the manufacturer who should bear the primary responsibility for putting defective products in the stream of trade. Considering the overall problem of prosecuting products liability cases, it would seem to make sense procedurally to have the plaintiff's cause of action whenever possible adjudicated in one action against manufacturer and retailer. If the plaintiff sues the dealer alone, the dealer in his own interest should implead the manufacturer and thus avoid circuity of action. Service of process on the manufacturer may present a problem occasionally. But here recourse may be had to the long-arm service rule, R. 4:4-4(c)(1), (e), with its obvious implications of liberal application. Its use may overcome the difficulty in most cases. [at 600-601]
This dictum shows the interrelationship between expanding concepts of product liability and personal jurisdiction, and the need for their mutual growth. As stated in McGee v. International Life Ins. Co., supra, "It cannot be denied that California has a manifest interest in providing effective means of redress for its residents," 355 U.S. at 223, 78 S.Ct. at 201.
With respect to undue inconvenience for defendant, an element of foreseeability enters into the consideration. As noted in Knight v. San Jacinto Club, Inc., 96 N.J. Super. 81 (Law Div. 1967):
Ultimately, then, the question whether New Jersey will recognize a single tort committed within its boundaries in a predicate for in personam jurisdiction must be resolved in terms of "minimum contacts" translated into factual considerations of interests to the forum state and fairness of trial there to defendant. [at 89]
HDAG manufactures its products for distribution throughout the world. Its products, these printing presses, while, perhaps, not inherently dangerous, can become so if they are defective. In this sense, HDAG's product is not unlike the flammable garment which caused the injury in Roland v. Modell's Shoppers World of Bergen City., 92 N.J. Super. 1 (App. Div. 1966), or the highpower engine whose explosion *14 caused the injury in Hoagland, supra. HDAG can foresee that their product may cause injury if defectively designed or manufactured. If HDAG wishes to benefit from American markets, therefore, it is not unreasonable or fundamentally unfair for them to be required to submit to the jurisdiction of a state whose resident has allegedly been injured by its product.
Motion to dismiss for lack of proper service is denied.