Roy G. GELINEAU and Mary Gelineau, his wife, Plaintiffs,

v.

NEW YORK UNIVERSITY HOSPITAL et al., Defendants.

Civ. A. No. 1755–73.

United States District Court, D. New Jersey.

May 1, 1974.

James W. Taylor, New York City, by Morris R. Zucker, Newark, N. J., for New York University Hospital.

Frank J. Brunetto, Jr., by Joseph A. Maffongelli, Jr., Montclair, N. J., for plaintiffs.

Morgan, Melhuish, Monaghan, McCoid & Spielvogel by James L. Melhuish, Livingston, N. J., for defendant Pfizer, Inc.

## OPINION

STERN, District Judge:

This is a diversity action wherein plaintiffs, a married couple residing in New Jersey, sue three corporate defendants, all having their principal places of business in the State of New York. The plaintiff, Roy Gelineau, at the behest of his local New Jersey physician, traveled to New York City to seek treatment for an aneurism by a physician licensed to practice in the State of New York. Subsequent to the diagnostic confirmation, Gelineau was admitted to New York University Hospital, a defendant here, for surgical treatment of his malady. In the course of this treatment Gel-

ineau received blood transfusions. After his discharge from the hospital, Gelineau returned to his residence in New Jersey. Subsequently he was diagnosed as suffering from infectious hepatitis.

Gelineau sues here for damages sustained as a result of that disease. His wife sues for the resultant loss of his services and consortium. The complaint alleges that defendant, New York University Hospital, was negligent in administering and furnishing suitable blood to Gelineau and that the defendants, Pfizer, Inc. and Ipco Hospital Supply Corporation,[1] as suppliers of blood to New York University Hospital, were negligent in collection, processing, treating and storage of the blood injected into Gelineau. As a result of this negligence, it is accused, Gelineau contracted infectious hepatitis, the symptoms of which first appeared on his return to New Jersey. Plaintiffs also base their complaint on the theories of product liability and breach of warranty of merchantability as to all defendants.

Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, service was effected by use of New Jersey Rule 4:4–4(c)(1), the New Jersey "long arm" statute, which permits service of summons upon a foreign corporation by mail.

Defendant New York University Hospital makes substantial objection to the service herein. It claims that Rule 4:4–4(c)(1) does not allow, and indeed the due process clause of the United States Constitution prohibits jurisdiction, as here, where the defendant is a corporation which maintains no facilities or agents within New Jersey, which has never done any business within this State, whose sole state contacts lie in the fact that some of its employees reside here, and that it admits, as patients, persons who reside in New Jersey as well as various other states of the Unit-

---

1. Ipco Hospital Supply Corporation, allegedly, by acquisition, merger, or otherwise, has succeeded and/or absorbed Community Blood and Plasma Service, Inc. and National Blood Products, Inc., both of which supplied blood to New York University Hospital on the date of the alleged injury.

ed States and countries of the world, who travel from these residences to seek treatment at the hospital in New York.

█ Rule 4(e) of the Federal Rules of Civil Procedure permits service of process and the obtaining of "in personam" jurisdiction in any manner permitted by state rule or statute, and it is well settled that a United States Court, deciding the validity of that service, must test validity first by determining whether the state courts would hold it valid under state law, and, if they would, whether as a matter of federal law the scope of permissible service under state law is within the parameters of fundamental fairness as defined by the due process clause of the United States Constitution. Partin v. Michaels Art Bronze Co., 202 F.2d 541, 542 (3rd Cir. 1953); Pulson v. American Rolling Mill Co., 170 F.2d 193, 194 (1st Cir. 1948); Keckler v. Brookwood Country Club, 248 F.Supp. 645, 646 (N.D.Ill., 1964); and Elkhart Engineering Corp. v. Dornier Werke, 343 F. 2d 861, 863 (5th Cir. 1965).[2]

In recognition of the fundamental transformation of our national economy over the years and the modern advances in transportation and communication that have alleviated the burden for a party sued to defend himself in a foreign jurisdiction where he engages in economic activity, the permissibility of "in personam" jurisdiction over non-residents by state courts has been expanded by the United States Supreme Court. McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957).

The parameter of "in personam" jurisdiction as limited by due process has been outlined in two major decisions of the Supreme Court: International Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95 (1945), and McGee v. International Life Insurance Co., *supra*. If a foreign corporation is not actually present in the forum state (Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877) ), then two types of situations arise in which such a corporation is deemed amenable to suit.

The *International Shoe* situation deals with a foreign corporation that, although not present within the forum through agents or facilities *actually* there, has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." 326 U.S. at 316.

█ The analysis as to the extent of the activities of the foreign corporation in the forum state must establish sufficient contacts or ties with that state to permit a finding that the corporation has availed itself of the benefits and protection of the laws of that state, whether or not it maintains permanent agents, assets or offices there. If this test is met, then under our traditional concepts of fair play and substantial justice, the corporation may be sued in that forum for *all purposes*, to the full extent that it may be sued in the state of its incorporation or the state of its principal place of business. Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).[3]

A second type of situation arises when an attempt is made to sue a corporation which is neither actually then present in the forum state nor deemed to be present because of repeated contacts

---

2. As a practical matter, in New Jersey, the test is the same. Both the New Jersey rule and the Supreme Court of New Jersey proclaim that New Jersey intends the outer limit of its "long arm" process to be the outer permissible limit of the due process clause itself. Avdel Corp. v. Mecure, 58 N.J. 264, 268, 277 A.2d 207, 209 (1971). *Cf.*, Japan Gas Lighter Association v. Ronson Corp., 257 F.Supp. 219, 231 (D.N.J.1966).

3. The New Jersey Courts have applied the *International Shoe* theory to the New Jersey "long arm" statutes. See Schaffer v. Granit Hotel, Inc., 110 N.J.Super. 1, 264 A.2d 240 (App.Div.1970), and Oliff v. Kiamesha Concord, Inc., 106 N.J.Super. 121, 254 A.2d 330 (Law Div.1969).

with the forum (*International Shoe*), but where, instead, the suit is itself predicated on an alleged wrong done to the plaintiff within the forum state arising out of a single or isolated act done by the defendant within the forum. This is precisely the case of McGee v. International Life Insurance Co., *supra.*

In *McGee,* a nonresident insurance company mailed a reinsurance certificate to petitioner's son, a California resident, and offered to continue his insurance. The California resident accepted the offer and paid the premiums by mail from his California home to the respondent in Texas. Petitioner, beneficiary and mother of the insured, thereafter sent proofs of her son's death to the respondent, but the insurance company refused to pay the claim. A unanimous Supreme Court held, upon these facts, that the suit in California to collect the insurance proceeds was "based on a contract which had substantial connection with that state." Although the insurance company was not actually then present in California, and had no contacts with California other than this one contract, the Supreme Court held that due process was not offended by making the insurance company amenable to California "in personam" jurisdiction, and requiring it either to appear in the forum state or default. *McGee, supra,* at 223.

*McGee* has not extinguished all restrictions on the personal jurisdiction of state courts. The Supreme Court has reiterated the need for fundamental fairness when a state subjects a non-resident to the jurisdiction of its courts. In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), Chief Justice Warren warned:

. . . it is a mistake to assume that this trend [McGee] heralds the eventual demise of all restrictions on the personal jurisdiction of state

courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. . .. .

357 U.S. at 251.

Upon the tenets of these cases we examine the essential facts in the case at bar.

By affidavit, defendant New York University Hospital, claims: that University Hospital is a unit of New York University, a New York Educational corporation, located in the City of New York; that University Hospital does not solicit patients from outside New York State by mail, advertisement or otherwise; that University Hospital does no business and has no agents in the State of New Jersey; that all doctors on the staff of New York University Hospital are licensed to practice in the State of New York; and that on February 28, 1972, Roy Gelineau was admitted to University Hospital by a doctor on the staff of University Hospital. It asserts that the plaintiff unilaterally sought medical treatment from a New York physician and was thereafter admitted to New York University Hospital by his New York physician.

The plaintiff, by the use of admissions [4] propounded to New York University Hospital, asserts that the sufficient minimal contacts with the State of New Jersey exist to allow subjection of "in personam" jurisdiction over New York University Hospital

---

4. Plaintiff, by asserting a strict interpretation of Rule 36, Federal Rules of Civil Procedure, has attempted to convert New York University Hospital's responses to the request for admissions into absolute affirmative admissions. This Court, however, interprets those responses to mean that the information known or obtainable by New York University Hospital is insufficient to enable it to admit or deny the requested admissions.

without violating due process and traditional fundamental fairness. Defendant Pfizer, Inc., in opposing the motion to dismiss, states that New York University Hospital, at the time of plaintiff's admission to the hospital and at all times thereafter, was fully aware that the plaintiff was a resident of New Jersey and certainly knew or should have foreseen that the plaintiff would return to his home state. Pfizer argues, under the "stream of commerce theory",[5] that personal jurisdiction over New York University Hospital does not offend the fundamental fairness required by due process. These claims will be more fully discussed below.

Analysis under the *International Shoe* test clearly shows that New York University Hospital does not have the minimal contacts necessary to subject it to New Jersey jurisdiction. This Court finds that New York University Hospital does no business in the State of New Jersey. New York University Hospital has no business agents here. It has no office here. It has no property here.

 It is true that some of its employees reside in New Jersey, but that, in and of itself, does not mean that New York University Hospital does business in New Jersey, or wherever else its employees happen to reside. Bernardi Bros., Inc. v. Pride Manufacturing, Inc., 427 F.2d 297 (3rd Cir. 1970) at 300. While it is also true that some members of the professional staff of New York University Hospital, physicians and nurses, are licensed to practice in New Jersey, in other states, and perhaps even in other countries, this does not mean that New York University Hospital does business in New Jersey, in those other states, or in those other countries. *Cf.,* Aylstock v. Mayo Foundation, 341 F. Supp. 560 (D.Mont.1972).

Under the *International Shoe* test, we conclude that the subjection of New York University Hospital to "in personam" jurisdiction in New Jersey, based upon the aforementioned contacts, would be fundamentally unfair, substantially unjust, and thus be a transgression of due process.

New York University Hospital is thus not actually present in the forum state, nor deemed to be present because of repeated contacts with the forum (under the *International Shoe* test). Therefore, "in personam" jurisdiction, if it is found to exist at all, must be based upon *McGee* rationale. That is, the suit at bar must be related to a transaction which itself has sufficient contact with the forum state, so that it is not unfair to require the defendant to appear in the forum to defend the manner in which it conducted the transaction.[6]

█ The *McGee* rationale, as interpreted by the New Jersey Courts, extends to the very limits of the due process clause. Certisimo v. Heidelberg, 122 N.J.Super. 1, 298 A.2d 298 (Law Div. 1972), aff'd. sub nom Van Eeuwen v. Heidelberg Eastern, Inc., 124 N.J.Super. 251, 306 A.2d 79 (App.Div.1973), and the cases cited therein.

This Court has recently decreed that when a corporation, although maintaining no office, agents or property in New Jersey, seeks to avail itself of New Jersey markets by directly shipping its manufactured goods into this State, it may be held accountable within this State if the machinery knowingly shipped here, to be operated here, is negligently designed or manufactured to the injury of a resident here. In such case the manufacturer, who entered this State, either actually by agent or constructively by machinery sent and sold by it here, must return again to this State to defend the fitness of the products which it placed here. Reilly v. Wolff, 374 F.Supp. 775 (D.N.J.1974).

---

5. Certisimo v. Heidelberg, 122 N.J.Super. 1, 298 A.2d 298 (Law Div.1972), aff'd. sub nom Van Eeuwen v. Heidelberg Eastern, Inc., 124 N.J.Super. 251, 306 A.2d 79 (App.Div.1973).

6. *Cf.,* Wurtenberger v. Cunard Line Limited, 370 F.Supp. 342 (S.D.N.Y.1974).

■ The underlying predicate involved in these cases, such as Reilly v. Wolff, *supra,* and Certisimo v. Heidelberg, *supra,* is that when a manufacturer deliberately seeks to profit from marketing its products in a state, he is doing business within that state as to each transaction, whether he does so by an agent, indirectly by mail or even more indirectly through a third party, who may have an exclusive distributorship. In such case there is nothing unfair, unjust or violative of due process standards in imposing "in personam" jurisdiction over such a manufacturer in an action predicated upon that transaction.

Indeed, under such circumstances it would be fundamentally unfair for those who purchased products in New Jersey, relying on the protection of New Jersey's laws and courts to assure that the New Jersey's standards of fitness and warranties would be maintained, to be denied adjudication of their claims, and forced to travel throughout this nation, perhaps the world, seeking a forum in which the manufacturer of these goods was actually present. But this is not the case *sub judice.*

■ The case at bar does not involve a product which was deliberately or foreseeably shipped into the forum state's markets. It focuses on a service, not performed in the forum state but in a foreign state, rendered after the plaintiff voluntarily traveled to the foreign state so that he could benefit from that service which was available there only.[7]

■ When one seeks out services which are personal in nature, such as those rendered by attorneys, physicians, dentists, hospitals or accountants, and travels to the locality where he knows the services will actually be rendered, he must realize that the services are not directed to impact on any particular place, but are directed to the needy person himself. While it is true that the nature of such services is that if they are negligently done, their consequences will thereafter be felt wherever the client or patient may go, it would be fundamentally unfair to permit a suit in whatever distant jurisdiction the patient may carry the consequences of his treatment, or the client the consequences of the advice received.

Unlike a case involving voluntary interstate or international economic activity, such as Reilly v. Wolff, *supra,* which is directed at the forum state's markets, the residence of a recipient of personal services rendered elsewhere is irrelevant and totally incidental to the benefits provided by the defendant at his own location. It is clear that when a client or a patient travels to receive professional services without having been solicited (which is prohibited by most professional codes of ethics), then the client, who originally traveled to seek services apparently not available at home, ought to expect that he will have to travel again if he thereafter complains that the services sought by him in the foreign jurisdiction were therein rendered improperly.

Any other rule would seem to be not only fundamentally unfair, but would inflict upon the professions the obligation of traveling to defend suits brought in foreign jurisdictions, sometimes very distant jurisdictions, there brought solely because the patient or client upon his return to his own home decided to sue at home for services sought by himself abroad.[8]

Such a rule would have a chilling effect on the availability of professional services to non-residents. Professionals in the medical field, for example, concerned with one of the most rapidly advancing sciences of modern times, would

7. The only forum state contact which the plaintiff claims, besides his residency in New Jersey, is that the suffering experienced by the plaintiff, allegedly as a result of the defendant's tortious conduct, was here in New Jersey. But see Anderson v. Matson Navigation Co., 336 F.Supp. 1388, 1391 (D. Minn.1971).

8. *Cf.,* Wright v. Yackley, 459 F.2d 287 (9th Cir. 1972).

be hesitant to treat a non-resident if they knew that thereafter, upon the receipt of a registered letter, they could be compelled to travel to a foreign state, and there to account, under the laws of that state, for the services which were sought from them and rendered by them at home. The issue is whether or not a physician, a hospital, or such, licensed only to practice in New York, having been sought out by a resident of the State of New Jersey, or even perhaps a resident of a foreign nation, should be required to defend a malpractice action in those respective forums based upon the standards of care and the substantive laws of those foreign forums.[9] We think not.

The Supreme Court in Hanson v. Denckla, *supra*, has stated that:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but *it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State,* thus invoking the benefits and protections of its laws. (Emphasis added)

Hanson v. Denckla, *supra*, at 253.

The Third Circuit has applied Hanson v. Denckla to New Jersey's "long arm" statute in a situation similar to the case *sub judice*.

In Scheidt v. Young, 389 F.2d 58 (3rd Cir. 1968), a New Jersey plaintiff sued the owners of a Pennsylvania resort in the United States District Court in New Jersey, alleging that the injury she incurred in a softball game at the resort in Pennsylvania was the result of a negligent act of the defendants in Pennsylvania.

Extra territorial service of process was effected pursuant to Rule 4(e) of the Federal Rules of Civil Procedure in the manner prescribed by the rule of the state in which the district court sits (New Jersey). To sustain the service, the plaintiff relied upon (1) defendant's advertisements in a New York newspaper which was also circulated in New Jersey; (2) a telephone call initiated by the plaintiff to the defendant in Pennsylvania; (3) defendant's receipt of a deposit sent from New Jersey; and (4) a visit to New Jersey by defendant's representative regarding the accident.

Thus, the Third Circuit, in a per curium opinion, affirmed the district court's judgment quashing service of process for the reason that defendant's activities did not constitute the "minimum contacts" necessary to sustain jurisdiction, as required by due process under the standards of Hanson v. Denckla, *supra*, at 253; Scheidt v. Young, *supra*.

Here, as we have found, New York University Hospital has not purposefully availed itself of the privileges of conducting activities within the forum state. The medical services that it provided to the plaintiff were performed in New York at the request of the plaintiff who unilaterally traveled to New York to receive them. The residence of the plaintiff herein was, and is now irrelevant to the services provided by this defendant at its location.

The Courts of New Jersey therefore cannot, consistent with due process and fundamental fairness, exercise "in personam" jurisdiction over New York University Hospital predicated on the man-

---

9. State jurisdictions, by statute and court decision, have differed greatly in the substantive law aspects in dealing with tort actions involving blood transfusions. See Trout, Blood Transfusions, 73 Dick.L.Rev. 201 (1969). The Supreme Court of New Jersey, as of the time of this decision, has not yet definitively ruled on the applicability of product liability to blood transfusions. Brody v. Overlook Hospital, 127 N.J.Super. 331, 317 A.2d 392 (App.Div.1974). Cert. granted 6/19/74 (No. C–693); Also see Pollock, Liability of a Blood Bank or Hospital for a Hepatitis Associated Transfusion in New Jersey, 2 Seton Hall L.Rev. 47 (1970).

ner in which services were performed by it in New York, and cannot require New York University Hospital to appear to defend or default here.

Accordingly, the motion by New York University Hospital to quash service and to dismiss for lack of "in personam" jurisdiction is hereby granted.

Defendant New York University Hospital will please submit an Order in conformity with this Opinion within ten (10) days.