## WOODWARD v KEENAN

1. COURTS—JURISDICTION—OUT-OF-STATE DEFENDANTS—MEDICAL CARE.

   Michigan's interest in providing a convenient forum for vindicating the rights of its injured residents cannot override its legitimate concern that its citizens obtain out-of-state professional care whenever it is needed or desired; therefore, it is not desirable to apply a rule which would subject foreign doctors or hospitals to the personal jurisdiction of the Michigan courts in a case where a Michigan citizen travels to a foreign jurisdiction for professional care without having been solicited.

2. COURTS—JURISDICTION—OUT-OF-STATE DEFENDANTS—PROFESSIONALS—CARRYING ON BUSINESS.

   A ruling which provides that Michigan has no jurisdiction to entertain an action brought by a Michigan resident against an Indiana doctor and medical clinic for damages allegedly arising from treatment rendered to the Michigan resident who traveled to the foreign jurisdiction without having been solicited does not apply in any case where out-of-state professionals carry on any business in Michigan, or otherwise encourage Michigan residents on a systematic or continuing basis to utilize professional facilities outside of the state.

3. COURTS—JURISDICTION—REMAND—DISCOVERY—OUT-OF-STATE DEFENDANTS—CARRYING ON BUSINESS—STATUTES.

   An action by a Michigan resident against an Indiana doctor and medical clinic should be remanded for further discovery proceedings where the record is unclear as to whether the defendant out-of-state residents in fact carried on any business in Michigan for purposes of the statutes giving Michigan courts limited personal jurisdiction over foreign individuals and partnerships (MCLA 600.705[1], 600.725[1]; MSA 27A.705[1], 27A.725[1]).

Appeal from Berrien, Julian E. Hughes, J. Sub-

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 20 Am Jur 2d, Courts § 146.

mitted June 20, 1977, at Detroit. (Docket No. 30820.) Decided November 9, 1977.

Complaint by Victoria Woodward and Timothy J. Woodward against P. Justin Keenan, M.D., South Bend Clinic, and Bertram W. Smith, M.D., for damages for medical malpractice. Accelerated judgment for defendants P. Justin Keenan, M.D., and South Bend Clinic. Plaintiffs appeal. Remanded for further proceedings.

*Charfoos & Charfoos, P. C.* (by *Thomas H. Bleakley),* for plaintiffs.

*Kitch & Suhrheinrich, P. C.* (by *Scott A. Saurbier),* for defendants P. Justin Keenan, M.D., and South Bend Clinic.

Before: D. C. RILEY, P. J., and BASHARA and P. R. MAHINSKE,* JJ.

PER CURIAM. Plaintiffs appeal an adverse accelerated judgment dismissing their cause against defendants-appellees for want of *in personam* jurisdiction. GCR 1963, 116.1(1).

As best we can glean them, the facts are these: Plaintiff Victoria Woodward visited the Coloma, Michigan office of Dr. Amelia Fajardo, a family practitioner, complaining of progressive deafness and a "roaring" sensation in her left ear. Dr. Fajardo referred plaintiff to defendant South Bend Clinic, a medical center operating exclusively in Indiana since 1916. The clinic is a partnership with all of its staff residing in Indiana.

On October 9, 1973, Mrs. Woodward appeared at the clinic for examination, after a telephone appointment had been made either by Dr. Fajardo,

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

her office staff or the patient herself. Plaintiff brought with her a letter written by a Dr. Frederic A. Gibbs of Chicago, Illinois, reporting the results of an electroencephalogram Dr. Gibbs had recently performed.

At the clinic, Dr. Justin Keenan, M.D., examined plaintiff and then wrote a letter[1] to Dr. Fajardo detailing the results of his examination.

From this point onward, the record is extremely sketchy. It does not reveal what further role Dr. Fajardo may have played in plaintiff's case. Nor does it indicate the nature of defendant Bertram Smith's involvement with plaintiff Woodward (other than stating that he is a practicing medical physician and surgeon specializing in diseases of the ear, nose and throat from his offices in Coloma, Michigan). All that is certain is that plaintiff, despite a progressively worsening condition, never returned to the South Bend Clinic. Instead, she sought the services of a Michigan neurosurgeon who attributed her hearing problem to a brain

---

[1]
"Amelia Fajardo, M.D.
429 Paw Paw
Coloma, Michigan 49038

Re: Victoria Woodward

"Dear Dr. Fajardo:
"Thank you for your referral of this patient. Her headaches have been present for such a long time that I doubt they are of organic etiology. The electroencephalogram is not helpful, and I believe the changes are of no consequence.
"She apparently has hearing loss and dizzy spells. I believe she has had an ENT [Ear, Nose, Throat] evaluation for this. I trust that the findings are consistent with cochlear rather than more central pathology, and that there was nothing in the evaluation to suggest a posterior fossa lesion. If there is any question of this in the ENT consultant's evaluation, I would like to see her again to do at least a spinal tap. X-rays of the skull including basilar and stenver's views, taken here, were negative aside from mild asymmetries of the foramen ovale and foramen spinosum which probably are of no consequence.

"Sincerely,

"P. Justin Keenan, M.D."

tumor. By the time of surgery, September 4, 1974, plaintiffs allege that the tumor was so extensive that the neurosurgeon could remove only 80 to 90 percent of it and that damage to the brain resulted. Additional surgery was required on January 22, 1975.

Charging appellees with a failure timely to diagnose plaintiff's condition, the complaint alleged that Mrs. Woodward suffered complete facial paresis and "total losses" of some "cranial nerves". Victoria Woodward sought a million dollars in damages and her husband, Timothy J. Woodward, sought $250,000; they demanded a jury trial. Appellees received service of process in Indiana.

The lower court, in granting appellees' motion for accelerated judgment, ruled by written opinion that appellees' contacts with the State of Michigan were insufficient under the due process clause to warrant the exercise of limited personal jurisdiction over them.

On appeal, plaintiffs maintain that the mailing of a diagnostic letter into Michigan, with knowledge that it would be used in future treatment of plaintiff's condition, provides the requisite Michigan contact which permits the court reasonably to exercise limited personal jurisdiction over the Indiana defendants. In support, plaintiffs point to MCLA 600.705(2); MSA 27A.705(2) and MCLA 600.725(2); MSA 27A.725(2) and charge that the sending of the allegedly faulty diagnosis caused tortious consequences to occur in Michigan.

Plaintiffs cite no Michigan cases, indeed no cases at all, where courts, on similar facts, have held it reasonable under the due process clause to bind foreign doctors or hospitals to the personal jurisdiction of the forum state. Our independent examination uncovers cases uniformly rejecting plain-

tiffs' contention. See *Gelineau v New York University Hospital,* 375 F Supp 661 (D NJ, 1974), *Wright v Yackley,* 459 F2d 287 (CA 9, 1972), *McAndrew v Burnett,* 374 F Supp 460 (MD Pa, 1974), *Aylstock v Mayo Foundation,* 341 F Supp 560 (D Mont, 1972), and *Soares v Roberts,* 417 F Supp 304 (D RI, 1976).

While we recognize the state's interest in providing a convenient forum for vindicating the rights of its injured residents, this interest cannot override Michigan's legitimate concern that its citizens obtain out-of-state professional care whenever it is needed or desired.

Our views are accurately reflected in *Gelineau, supra,* a case largely resembling the present suit:

"Unlike a case involving voluntary interstate or international economic activity * * * which is directed at the forum state's markets, the residence of a recipient of personal services rendered elsewhere is irrelevant and totally incidental to the benefits provided by the defendant at his own location. It is clear that when a client or a patient travels to receive professional services without having been solicited * * * then the client, who originally traveled to seek services apparently not available at home, ought to expect that he will have to travel again if he thereafter complains that the services sought by him in the foreign jurisdiction were therein rendered improperly.

"Any other rule would seem to be not only fundamentally unfair, but would inflict upon the professions the obligation of traveling to defend suits brought in foreign jurisdictions, sometimes very distant jurisdictions, there brought solely because the patient or client upon his return to his own home decided to sue at home for services sought by himself abroad.

"Such a rule would have a chilling effect on the availability of professional services to non-residents. Professionals in the medical field, for example, concerned with one of the most rapidly advancing sciences of modern times, would be hesitant to treat a non-

resident if they knew that thereafter, upon the receipt of a registered letter, they could be compelled to travel to a foreign state, and there to account, under the laws of that state, for the services which were sought from them and rendered by them at home. The issue is whether or not a physician, a hospital, or such, licensed only to practice in New York, having been sought out by a resident of the State of New Jersey, or even perhaps a resident of a foreign nation, should be required to defend a malpractice action in those respective forums based upon the standards of care and the substantive laws of those foreign forums. We think not.

* * *

"Here, as we have found, New York University Hospital has not purposefully availed itself of the privileges of conducting activities within the forum state. The medical services that it provided to the plaintiff were performed in New York at the request of the plaintiff who unilaterally traveled to New York to receive them. The residence of the plaintiff herein was, and is now irrelevant to the services provided by this defendant at its location." 375 F Supp at 667–668. (Footnotes omitted.)

Although factual distinctions can be drawn which may differentiate the suit at hand from *Gelineau* and the other cited cases, *(e.g.,* here plaintiff on the suggestion of her Michigan doctor traveled less than 50 miles to the South Bend Clinic), the principle nonetheless remains: Michigan has a significant interest in assuring to its residents the availability of desirable or necessary services rendered by foreign professionals. This interest would not be advanced by application of a parochial rule tying foreign professionals to the yoke of the Michigan courts.

Before closing, however, we add a caveat. The present holding shall not apply in instances where out-of-state professionals carry on any business in Michigan, for in such a case their professional

status can have no bearing. Sifers v Horen, 385 Mich 195, 199–200; 188 NW2d 623 (1971), MCLA 600.705(1); MSA 27A.705(1), MCLA 600.725(1); MSA 27A.725(1). If, with the advent of advertising by professionals (an event apparently unforeseen by the *Gelineau* court, 375 F Supp at 667), Michigan residents are encouraged on a systematic or continuing basis to utilize professional facilities outside of Michigan, then those offering this encouragement will have purposefully availed themselves of the privilege of conducting activities within Michigan and thereby have become amenable to the personal jurisdiction of our courts.[2] *Soares v Roberts, supra* at 308–309, *cf., Wright v Yackley, supra* at 290.

In this regard, we highlight certain curious portions of the lower court record. In the affidavit of Dr. Keenan, the doctor states:

"9. That P. Justin Keenan, M.D., maintains no contracts, referral service arrangements, nor maintains any other arrangements with Bertram W. Smith, M.D., nor anyone else in the State of Michigan."

In a similar vein, the affidavit of Mr. Eugene Ladewski, the administrator for defendant South Bend Clinic, reports:

"7. That the South Bend Clinic maintains no contracts, referral service agreements nor any other arrangements with Bertram W. Smith, M.D."

[2] Where foreign professionals consciously solicit Michigan business, this state's interest in the availability of out-of-state professional services is not jeopardized since the foreign professionals will have already decided that the benefits of increased revenues from Michiganians offset the potential exposure to suit in Michigan. Should these professionals decide to cease solicitation of Michigan residents, they need not turn away *unsolicited* Michigan business because the holding in the present case stands as a bar to their being sued in Michigan.

Plainly, the above affidavits do not suggest that defendants have never encouraged Michigan residents to utilize the facilities of defendant Clinic. While Dr. Keenan may not maintain formal contracts or referral service arrangements with anyone in Michigan, he may have (perhaps informally) encouraged nearby Michiganians to utilize his or the clinic's services. More to the point, that the clinic has no fixed arrangements with defendant Bertram Smith does not belie the possible existence of formal or informal compacts with others in Michigan.

We suspect that the lower court may have shared our doubts, for its opinion recognized that "there might be circumstances in a case involving a Michigan patient and an out-of-state physician which would provide a basis for Michigan jurisdiction over the doctor". Thus, his amended order of accelerated judgment carefully gave finality only to those "matters herein [referring to the facts of record] set forth".

Accordingly, while we would concur in the trial court's due process analysis, we consider it consistent with traditional notions of fair play and substantial justice, *International Shoe Company v Washington,* 326 US 310; 66 S Ct 154; 90 L Ed 95 (1945), to remand the cause for limited and expeditious discovery—the bounds of which are to be established in the discretion of the trial court—to determine whether either of the defendants in fact carried on any business in Michigan for purposes of MCLA 600.705(1); MSA 27A.705(1), MCLA 600.725(1); MSA 27A.725(1) and this opinion. GCR 1963, 820.1(7).

Remanded for further proceedings.

No costs, the construction of statutes being involved.

We retain jurisdiction.