Gaston and Pallie
WALLACE, Plaintiffs,

v.

Stewart D. FRANK, Robert Davidson, Gertrude Quinlan Davidson, Frank & Company, P.C., a Michigan Professional Corporation, Warren Rosenkranz, the Rosenkranz Group, a Pennsylvania Limited Partnership, Technological Advancement Corporation, a Michigan Corporation, and Raddiss & Rosenfelt, a Pennsylvania Professional Corporation, Defendants.

Civ. No. 86–CV–73351–DT.

United States District Court, E.D. Michigan, S.D.

June 17, 1987.

Richard Yanko & Mark C. Lahti, Birmingham, Mich., for plaintiffs.

Patrick Barrett & Christine Oldani, Detroit, Mich., for defendant Raddiss & Rosenfelt.

Robert N. Dunn & Jaimie A. Kleinstiver, Detroit, Mich., for defendants Warren Rosenkranz & The Rosenkranz Group.

COHN, District Judge.

## MEMORANDUM AND ORDER

This is a securities fraud case with pendent state claims. Before the Court are the motions of defendant Raddiss & Rosenfelt (now Rosenfelt, Siegel & Goldberg) and defendants Warren Rosenkranz and The Rosenkranz Group to dismiss for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). Plaintiffs have responded. For the reasons which follow, the motions will be denied.

### I.

#### A.

Raddiss and Rosenfelt are charged with conspiracy to defraud in Count I of the complaint and with negligence in Count VIII. It appears undisputed that Raddiss & Rosenfelt, a Pennsylvania partnership, performed accounting services and prepared financial and tax information for The Rosenkranz Group, a Pennsylvania limited partnership, charged with being the principle instrument of the fraud alleged by plaintiffs. Plaintiffs were limited partners in The Rosenkranz Group. It also appears undisputed that pertinent financial papers were sent by Raddiss & Rosenfelt to plaintiffs in Michigan.

If the Court has jurisdiction over Raddiss & Rosenfelt, it must be found in the limited personal jurisdiction provisions of Michigan's long-arm statute, Mich.Comp.Laws § 600.725. Under this statute, a partnership may be subject to the jurisdiction of this court for doing, or causing any act to be done, or consequences to occur in Michigan resulting in an action for tort. *Id.*

■ The Court is satisfied that an accounting firm that prepares and sends into Michigan for use by a Michigan resident allegedly fraudulent financial and tax information, which causes injury to the Michigan resident, is subject to the long-arm jurisdiction of a federal court in Michigan. This conclusion is consistent with the Court's decision in *Pasternak v. Sagittarius Recording Co.*, No. 82–70500, Order of Jan. 13, 1983 (copy attached). A more detailed explanation follows in Part III.

#### B.

■ Warren Rosenkranz and The Rosenkranz Group are charged with three violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, in Count III and with federal and state securities fraud claims in Counts IV and V. While plaintiffs originally invested in Dearborn Associates, a limited partnership organized under Florida law, all the interests in that limited partnership were transferred to The Rosenkranz Group, with the latter's consent, when the subscription level proved inadequate to establish Dearborn Associates. Subsequent to the transfer, The Rosenkranz Group caused a private placement memorandum and an "offer of rescission" to be sent to plaintiffs in Michigan. While Rosenkranz and The Rosenkranz Group heavily rely on the fact that a California law firm, not the limited partnership, actually sent the investment and rescission papers to plaintiffs in Michigan, placing substance over form, the mailing was done on behalf of The Rosenkranz Group and clearly for its benefit. In any event, the record also shows that Rosenkranz sent financial papers concerning The Rosenkranz Group to plaintiffs in Michigan.

In the same fashion as with Raddis & Rosenfelt, if the Court has jurisdiction over Rosenkranz and The Rosenkranz Group, it must be found in the limited personal jurisdiction provisions of Mich.Comp.Laws § 600.725.

The Court is satisfied that a limited partnership and its general partner, which cause to be sent into Michigan an allegedly fraudulent and misleading private placement memorandum, an offer of rescission and fraudulently prepared financial papers

are also subject to the long-arm jurisdiction of a federal court in Michigan. A more detailed explanation follows in Part IV.

## II.

### A.

The question of jurisdiction is to be decided by Michigan law under Fed.R.Civ.P. 4(e). Any decision on whether to exercise personal jurisdiction over a particular defendant depends on the facts of the situation. *Woods v. Edgewater Amusement Park*, 381 Mich. 559, 569, 165 N.W.2d 12 (1969). The burden of establishing jurisdiction is on plaintiffs. When the issue is determined solely on the basis of written materials, they need only demonstrate a *prima facie* case, and the pleadings and affidavits must be considered in the light most favorable to the party asserting the existence of jurisdiction. *Welsh v. Gibbs*, 631 F.2d 436 (6th Cir.1980); *K-Mart Corp. v. Knitjoy Mf'g., Inc.*, 542 F.Supp. 1189, 1191 (E.D.Mich.1982).

### B.

The Court must resolve two issues: first, whether a defendant's acts created a relationship in Michigan within the meaning of its long-arm statute, and second, whether the exercise of limited personal jurisdiction over the defendant is compatible with due process. *Khalaf v. Bankers & Shippers Ins. Co.*, 404 Mich. 134, 142, 273 N.W.2d 811 (1978). Michigan has interpreted its long-arm statute as being the broadest grant of jurisdiction consistent with the constitutional requirements of due process. *Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623 (1971); *Microelectronic Systems Corp. of America v. Bamberger's*, 434 F.Supp. 168, 170 (E.D.Mich.1977). Determining the outer limits of personal jurisdiction permitted by the due process clause is a federal question. *Bamberger's*, 434 F.Supp. at 171.

### C.

As to due process, the Court must consider whether a defendant purposefully established such "minimum contacts" with Michigan that maintenance of the action "does not offend traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The substantial connection necessary for a finding of minimum contacts must come about by the action of the defendant purposefully directed toward the forum state. *Burger King Corp*, 471 U.S. at 476, 105 S.Ct. at 2186. By such action, the defendant has clear notice that it is subject to suit in the forum state and can therefore take appropriate action to alleviate the risk. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Also, the cause of action must arise from the defendant's activities in the forum. *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968). A single act, if it has a "substantial connection" with the forum state, may be sufficient. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Finally, the determination of reasonableness of the exercise of jurisdiction in a particular case depends on the evaluation of several factors:

> A court must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Asahi Metal Indus. Co. v. Super. Ct. of California*, —— U.S. ——, ——, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92, 105 (1987) (citing *World-Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564–565).

## III.

### A.

While plaintiffs currently reside in Washington D.C., they resided in Michigan during the events in question. Several of the

defendants charged with fraudulent conduct live in Michigan, e.g., Stewart Frank, Robert Davidson, Gertrude Davidson and Frank & Company; several live in Pennsylvania. Plaintiffs claim that defendants set up a scam limited partnership, The Rosenkranz Group, in which plaintiffs invested in reliance on the representation that they would realize legitimate tax benefits from their investment. Further, plaintiffs say that Raddiss and Rosenfelt fraudulently performed the accounting and tax work for the scam, causing damage to plaintiffs when they relied on their papers to take tax deductions which the Internal Revenue Service later disallowed and assessed interest and penalties.

### B.

■ While Raddiss & Rosenfelt summarily denies any relationship with Michigan, it nonetheless concedes that "as part of its performance of professional services for the Rosenkranz Group some of whose Limited Partners resided in Michigan, [it] mailed prepared K–1 forms and Financial Statements to them in Michigan." (Motion to Dismiss, par. 17). This is enough. Raddiss & Rosenfelt were on clear notice that they were sending financial information to plaintiffs in Michigan on which plaintiffs would rely. If in fact the information was false and Raddiss & Rosenfelt fraudulently prepared the papers, it is responsible to plaintiffs, who were injured by its actions.

Plaintiffs' cause of action against Raddiss & Rosenfelt arises directly from the latter's contacts with Michigan. Requiring Raddiss & Rosenfelt to account for their actions in Michigan does not offend "traditional notions of justice and fair play." While the contacts may be quantitatively minor, they are qualitatively substantial. It is always a burden to be a defendant. However, Raddiss & Rosenfelt's burden here is occasioned by what it did in Michigan, not simply because it must defend in Michigan.

### C.

The cases cited by Raddiss & Rosenfelt in support of its motion are distinguishable.

In *Doebler v. Stadium Prod's Ltd.*, 91 F.R.D. 211 (W.D.Mich.1981), the court found that the third-party defendant had not purposefully availed himself of the "privilege of conducting business activities" in Michigan and thus fell outside the relevant provision of the long-arm statute allowing limited jurisdiction over a party who entered into a contract for services to be performed in Michigan. *Id.* at 215. Here, plaintiffs rely on the provision of the long-arm statute allowing limited jurisdiction over a party who "causes a tort to occur" in Michigan stemming from his contacts with Michigan. Further, plaintiff is correct in noting that the third-party plaintiff's cause of action in *Doebler* did not directly arise from the third-party defendant's contacts with Michigan. The case is not dispositive here.

In *Woodward v. Keenan*, 79 Mich.App. 543, 261 N.W.2d 80 (1977), the plaintiff filed a medical malpractice suit against an Indiana doctor who, after examining plaintiff in Indiana, mailed a negligently prepared diagnostic letter to plaintiff's family doctor in Michigan. The court of appeals found that the Indiana doctor had not caused a tort to occur in Michigan on the grounds that the doctor did not engage in activity voluntarily directed at Michigan and that plaintiff, having once travelled to Indiana for treatment, should have anticipated travelling there again if she desired to complain of negligent medical services. *Id.* at 547, 261 N.W.2d 80. If plaintiffs were simply alleging negligence against Raddiss & Rosenfelt, *Woodward* might have been dispositive. However, here plaintiffs charge fraudulent conduct; former District, and now Circuit, Judge Damon Keith's conclusion in *Hadad v. Lewis*, 382 F.Supp. 1365, 1374 (E.D.Mich.1974), is pertinent:

> The contacts which the defendant must have with the forum are not measured quantitatively, but rather are analyzed qualitatively to determine whether a tort committed in this state was in some way the result of those contacts.

> . . . .

> [I]n view of the particular tort, the Court believes that a single material represen-

tation, which was relied upon, may be sufficient contact with Michigan....

The plaintiff in *Stonecipher v. Sexton*, 54 F.R.D. 435 (D.Kansas 1972), brought a legal malpractice claim in federal court in Kansas. The defendant was an Arizona citizen, and the court found the malpractice to have occurred in Illinois. The only contacts between the defendant and Kansas was a telephone conversation initiated by plaintiff from Kansas to the defendant in Arizona and the defendant's appearance in Kansas as a witness. The court found that the defendant had no substantial connection with Kansas in the sense of transacting business there, nor did the Kansas contacts give rise to the plaintiff's claim. *Id.* at 440. Here, Raddiss & Rosenfelt purposefully sent papers into Michigan and plaintiff's cause of action directly arises from those contacts.

*Mayes v. Leipziger*, 674 F.2d 178 (2d Cir.1982), involved an interpretation of New York's long-arm statute. The defendant never entered New York, was solicited outside of New York and negligently performed services for plaintiff outside of New York. *Id.* at 185. Here, Raddiss & Rosenfelt purposefully made contact with plaintiffs in Michigan by sending them allegedly fraudulently prepared financial papers.

Finally, in *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7 (1st Cir.1986), the court of appeals said that a district court sitting in New Hampshire should have declined to exercise jurisdiction over a Massachusetts law firm hired to litigate a malpractice action in Massachusetts. The court of appeals explained that the case was "not an example of exercising personal jurisdiction when a resident has been injured within a state by conduct directed at that state", *id.* at 11, and found that plaintiff's injury occurred in Massachusetts when plaintiff's suit was dismissed by a Massachusetts court. The injury consisted of an inability to prosecute the suit in Massachusetts. *Id.* Here, the injury occurred in Michigan when Raddiss & Rosenfelt sent the financial papers to plaintiffs. Raddiss & Rosenfelt knew, or should have known, that the recipients of the papers would rely on them, and if damage resulted from its conduct, it was foreseeable that it would be haled into court in Michigan.

## IV.

### A.

■ While Rosenkranz and The Rosenkranz Group also summarily deny any relationship with Michigan, they nonetheless sent, or caused to be sent, to plaintiffs in Michigan a private placement memorandum, an offer of rescission and various other letters with attached financial papers. They concede that the California law firm mailed "offers of rescission and brochures to the investors of Dearborn Associates." (Motion to Dismiss, par. 17). The Rosenkranz Group did not actually solicit plaintiffs' investment in Dearborn Associates, from which plaintiffs' interest was transferred to The Rosenkranz Group. However, The Rosenkranz Group effectively solicited the *retention* of plaintiffs' investment in the Pennsylvania limited partnership.

This is enough. Rosenkranz and The Rosenkranz Group were on clear notice that investment brochures and offers of rescission were being sent on their behalf to plaintiffs in Michigan and that plaintiffs would rely on these papers in deciding whether to continue as limited partners in The Rosenkranz Group. If the information contained in the investment brochures was fraudulent, false or misleading, Rosenkranz, as general partner, and The Rosenkranz Group are responsible to plaintiffs who were injured by their actions. Plaintiffs cause of action arises directly from the contacts of Rosenkranz and The Rosenkranz Group with Michigan. Requiring the limited partnership and its general partner to account for their conduct in Michigan also does not offend "traditional notions of justice and fair play." As with Raddiss & Rosenfelt, the burden on Rosenkranz and The Rosenkranz Group is occasioned by what they caused to occur in Michigan, not because they must defend in Michigan.

## B.

The cases cited by the Rosenkranz defendants in support of their motion are also distinguishable.

In *Etheridge v. Grove Mf'g Co.*, 415 F.2d 1338 (6th Cir.1969), the court of appeals held, under a narrow construction of Kentucky's long-arm statute, that to exert jurisdiction over a defendant, it had to be "doing business" in Kentucky. *Id.* at 1339. The Michigan statute, to the contrary, is construed broadly and allows limited jurisdiction over a defendant on a showing of less than "doing business" in the forum state. *See Sifers*, 385 Mich. at 199, 188 N.W.2d 811.

In *Buckeye Assoc's v. Fila Sports*, 616 F.Supp. 1484 (D.Mass.1985), the plaintiff did not file a response to the defendant's motion to dismiss. The decision hinged upon the plaintiff's consequent failure to carry its burden of establishing sufficient facts on which the court could exercise jurisdiction over the defendant. *Id.* at 1487. The existence of constitutionally sufficient minimum contacts with the forum state was thus irrelevant to the holding.

Finally, in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the Supreme Court granted certiorari to decide whether the state court had correctly ruled that limited personal jurisdiction could be asserted over a defendant on a cause of action *not arising out of, or related to, the corporations's activities within the forum state.* *Id.* at 409, 104 S.Ct. at 1869–70. Here, plaintiffs' cause of action clearly arises out of the Rosenkranz defendants' contacts with plaintiffs in Michigan allowing for a proper exercise of limited personal jurisdiction.

## V.

To summarize, the Court concludes that exercising limited personal jurisdiction over Raddiss & Rosenfelt, Warren Rosenkranz and The Rosenkranz Group on the facts presented by this case is compatible with the constitutional requirements of due process. Accordingly, the motions to dismiss are DENIED.

SO ORDERED.

## APPENDIX

FRANK C. PASTENAK, SIOUX SHARES CO., et al., Plaintffs,

v.

SAGITTARIUS RECORDING COMPANY, et al., Defendants.

Civil No. 82–70500

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

### ORDER

This is an action arising out of the incomplete performance of certain lease agreements between the Sagittarius Recording Company (Sagittarius) and plaintiffs of master recordings of musical entertainers. Plaintiffs leased these master recordings for the production and distribution of derivative recordings to the public; certain tax advantages were also contemplated by plaintiffs. In entering the lease agreements, plaintiffs relied in part on a prospectus issued by Sagittarius containing a 74 page opinion letter prepared by defendant Booth, Lipton & Lipton, a New York law firm; defendants Philip Pierce and Frederick M. Mintz are members of the firm. (The firm and the individual lawyers are referred to as the Booth defendants.) Count V of plaintiffs' amended complaint alleges that the Booth defendants knowingly made a number of material and substantial misrepresentations in the opinion letter with the intent that prospective investors such as plaintiffs would rely on these representations.

The Booth defendants have filed a motion to dismiss for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). A hearing was held on December 9, 1982.

In deciding a Rule 12(b)(2) motion, the factual allegations of the complaint are assumed to be true; plaintiffs only have to

demonstrate a *prima facie* case of the existence of jurisdictional facts and need not prove their claim on the merits. *K Mart Corp. v. Knitjoy Manufacturing, Inc.*, 542 F.Supp. 1189, 1191 (E.D.Mich. 1982). Plaintiffs bottom the claim of limited personal jurisdiction on M.S.A. § 27A.715(2) [M.C.L.A. § 600.725(2) ] (causing consequences to occur giving rise in Michigan to an action for tort). The Booth defendants respond that mere foreseeability that their actions in New York would have tortious consequences in Michigan is insufficient to meet constitutional standards of due process.

In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980), the Supreme Court discussed the constitutional exercise of state long-arm jurisdiction in a products liability context:

> "if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to service, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."

As pointed out in *Black & Company, v. Nova-Tech, Inc.*, 333 F.Supp. 468, 472–73 (D.Oreg.1971), a case with factual similarities to this one:

> "For jurisdictional purposes, a defective security should be no different from a defective product. Both carry dangerous consequences for the unsuspecting consumer. Constitutionally, it is no less fair to obtain long-arm jurisdiction over the seller and participants in the sale in Oregon of illegal securities than it is to serve local process upon the out-of-state manufacturer of a defective product sold in Oregon."

Based upon the record viewed as a whole, it appears that Booth, Lipton & Lipton prepared a very substantial opinion letter aware both of the kind of business Sagittarius was engaged in and of the use to which the letter would be put and that it might well be relied on by investors in Michigan. However, the individual involvement of defendants Pierce and Mintz is much less apparent on the present record. Accordingly, for the reasons stated herein and in open court on December 9, 1982, defendant Booth, Booth & Lipton's motion is DENIED. The motions of defendants Pierce and Mintz, however, are GRANTED and they are DISMISSED as defendants.

SO ORDERED.

/s/ Avern Cohn
AVERN COHN
United States District Judge

DATED: Jan. 13, 1983
Detroit, Michigan