Rosalie HORVATH and Michael
Horvath, husband and wife,
Plaintiffs,

v.

Wilbert P. NILES, D.O., Orthopedic Services of South Bend, Inc., and Michiana Community Hospital, jointly and severally, Defendants.

No. 1:91:cv:930.

United States District Court,
W.D. Michigan.

Sept. 28, 1992.

Bruce C. Conybeare, John C. Johnson, Conybeare Law Office, PC, St. Joseph, Mich., for plaintiffs.

Cynthia E. Merry, Vandeveer Garzia, PC, Detroit, Mich., Scott P. Whonsetler, Jacobson, Maynard, Tuschman & Kalur, Louisville, Ky., for defendants Wilbert P. Niles, D.O. and Orthopedic Services of South Bend, Inc.

Ronald E. Baylor, Miller, Canfield, Paddock & Stone, Kalamazoo, Mich., David J. Mallon, Jr., Gloria Aplin, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendant Michiana Community Hosp.

## OPINION

ENSLEN, District Judge.

This matter is before the Court on motions to dismiss for lack of jurisdiction and improper venue, submitted by each of the three defendants at bar. Plaintiffs, Rosalie and Michael Horvath, are Michigan residents who seek compensation for injuries which they allege arise from defendants' negligent acts and omissions during defendants' treatment of Rosalie Horvath's right knee. Plaintiffs commenced this medical malpractice action against Wilbert P. Niles, the orthopedic surgeon who performed surgery on Ms. Horvath's knee, Orthopedic Services of South Bend, Inc., Dr. Niles' employer, and Michiana Community Hospital, the hospital at which the alleged malpractice occurred. Plaintiffs allege that all defendants' either reside, operate, or are incorporated in Indiana.

## SUBJECT MATTER JURISDICTION

■ Defendants' motion asserts that this court does not have subject matter jurisdiction over this case, pursuant to F.R.C.P. Rule 12(b)(1). In reviewing a 12(b)(1) motion, the inquiry of the Court is whether or not the challenged pleading sets forth allegations sufficient to show that the Court has subject matter jurisdiction in the case. In making this determination, the pleadings are to be taken as true and construed in a light most favorable to the party opposing the motion. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court is not restricted, however, to examining only the pleadings, but may review any evidence such as affidavits to resolve factual disputes. *E.g. Land v. Dollar*, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). Should the pleader allege facts from which jurisdiction may be inferred, the motion must be denied. *Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375 (10th Cir.1978), *cert. denied*, 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1058.

Defendants do not dispute that they are either residents of Indiana, or corporations which hold their principal place of business in Indiana and are incorporated in Indiana. Furthermore, defendants do not dispute that plaintiffs are residents of Michigan. Therefore, the diverse citizenship of the parties confers subject matter jurisdiction over the dispute upon this court. Accordingly, defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

## PERSONAL JURISDICTION

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides the authority for the Court to dismiss a complaint for lack of personal jurisdiction. The trial court has discretion to decide a Rule 12(b)(2) motion before trial, with or without a hearing, or to defer a decision until trial. *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989). The plaintiff always bears the burden to establish facts necessary to support jurisdiction. *Id.* (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)). The nature of the burden, however, depends on whether the Court decides the issue on the written submissions or by a hearing. *Id.*

When the Court decides whether personal jurisdiction exists by consideration of the written submissions alone, plaintiff must bolster the allegations with affidavits or other evidence of specific facts to support jurisdiction, but the Court must " 'consider the pleadings and affidavits in the light

most favorable to the plaintiff.'" *Id.* (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981)). In other words, plaintiff has the burden of making a *prima facie* case for jurisdiction. *Id.* "If she meets that burden the motion to dismiss should be denied, 'notwithstanding any controverting presentation by the moving party.'" *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981)). However, "[a] threshold determination that personal jurisdiction exists 'does not relieve [the plaintiff] ... at the trial of the case-in-chief from proving the facts upon which jurisdiction is based by a preponderance of the evidence." *Id.* (quoting *United States v. Montreal Trust Co.*, 358 F.2d 239, 242 n. 4 (2d Cir.), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440, *reh'g denied*, 384 U.S. 982, 86 S.Ct. 1858, 16 L.Ed.2d 693 (1966)).

■ The Supreme Court recognizes two types of personal jurisdiction over defendants who are not residents of the forum state—specific and general jurisdiction. Specific jurisdiction exists when the defendant's contacts with the forum are related to the controversy and those contacts reach a "minimum" threshold. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). When the controversy does not arise out of the defendant's contacts with the forum, the court may exercise general jurisdiction if the defendant has "continuous and systematic" contacts with the forum, even though those contacts have no relation to the underlying controversy. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

*The Standard*

■ Because this case is brought in diversity, Michigan law governs this Court's exercise of personal jurisdiction over defendants. *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir.1972). Although the *International Shoe* standard sets liberal boundaries for state long-arm jurisdiction under federal due process, due process does not compel

states to reach the limits of those boundaries. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). Generally speaking, the Michigan jurisdictional statutes confer on the state courts the maximum scope of personal jurisdiction permitted by the due process clause of the fourteenth amendment. *Lak, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1298 (6th Cir.1989) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236 (6th Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981)). However, in this circumstance, the reach of the Michigan long-arm statutes is not coextensive with the Due Process Clause.

■ The courts of Michigan have chosen to shorten the reach of Michigan's long-arm statutes when they are applied to out-of-state medical providers. This result was accomplished in *Woodward v. Keenan*, 79 Mich.App. 543, 261 N.W.2d 80 (1977). In *Woodward*, the plaintiff was a Michigan resident who was losing her hearing. Plaintiff visited a Michigan doctor, who referred her to defendant South Bend Clinic, an Indiana establishment. Plaintiff was examined at the Indiana clinic by Dr. Keenan, who then sent a letter detailing the examination to plaintiff's Michigan physician. Later medical consultations in Michigan led Ms. Woodward to believe that Dr. Keenan failed to correctly diagnose her ailment, and she sued for malpractice in Michigan.

The Michigan Appellate Court which heard her case determined that it did not have personal jurisdiction over the Indiana defendants. Its interpretation of Michigan's long-arm statutes as applied to out-of-state health care providers was driven by policy considerations.

> While we recognize the state's interest in providing a convenient forum for vindicating the rights of its injured residents, this interest cannot override Michigan's legitimate concern that its citizens obtain out-of-state professional care whenever it is needed or desired.

*Woodward*, 79 Mich.App. at 547, 261 N.W.2d 80. The Court stated that its views were accurately reflected in the opin-

ion in *Gelineau v. New York University Hospital*, 375 F.Supp. 661 (D.N.J.1974). *Gelineau* states:

> It is clear that when a client or a patient travels to receive professional services without having been solicited * * * then the client, who originally traveled to seek services apparently not available at home, ought to expect that he will have to travel again if he thereafter complains that the services sought by him in the foreign jurisdiction were therein rendered improperly.

*Woodward*, 79 Mich.App. at 547, 261 N.W.2d 80, citing *Gelineau* at 667. *See also Alan B. McPheron, Inc. v. Koning*, 125 Mich.App. 325, 331–332, 336 N.W.2d 474 (1983) (relying on this reasoning to enforce Oklahoma's exercise of personal jurisdiction over a Michigan resident who failed to pay the Oklahoma attorney he had hired).

The *Woodward* Court went on to explain when out-of-state professionals may be sued in Michigan courts:

> The present holding shall not apply in instances where out-of-state professionals carry on any business in Michigan, for in such a case their professional status can have no bearing. If ... Michigan residents are encouraged on a systematic or continuing basis to utilize professional facilities outside of Michigan, then those offering this encouragement will have purposefully availed themselves of the privilege of conducting activities within Michigan and thereby have become amenable to the personal jurisdiction of our courts.

*Woodward*, 79 Mich.App. at 548–549, 261 N.W.2d 80 (citations omitted).

Therefore, the standard by which this Court must measure its general personal jurisdiction over out-of-state doctors and health care facilities is unique. As the Sixth Circuit has recognized, "[e]ven though states such as Michigan may at times indicate that they intend their long-arm statute to reach the outermost limits allowed by due process, cases like *Woodward* indicate that the Michigan courts are, in fact, stopping short of that boundary."

*Rann v. McInnis*, 789 F.2d 374, 377 (6th Cir.1986). For illustrative applications of the *Woodward* policy, see *Rann, supra* (finding that the court did not have personal jurisdiction over Canadian doctor who phoned Michigan plaintiffs and invited them to consult with him in Canada); *Werner Lehara International, Inc. v. Harris Trust and Savings Bank*, 484 F.Supp. 65 (W.D.Mich.1980) (finding that Michigan court had personal jurisdiction over Illinois bank which actively solicited referrals from Michigan banks). *See also Lemke v. St. Margaret Hospital*, 552 F.Supp. 833 (N.D.Ill.1982) (using similar reasoning to determine that Illinois long-arm statute reached Indiana doctor).

One ambiguity remains in this Court's application of *Woodward*. *Woodward* explicitly addresses *specific* jurisdiction. Ms. Woodward claimed personal jurisdiction on the basis of MCLA § 600.705 and MCLA § 600.725. Section 600.705 provides in relevant part that the court may exercise limited personal jurisdiction over an individual who "do[es] or caus[es] an act to be done, or consequences to occur, in the state resulting in an action for tort." *Id.* § 600.-705(2). Section 600.725 is a parallel provision which applies to partnerships. Ms. Woodward argued that defendants' sending of the allegedly faulty diagnosis caused tortious consequences to occur in Michigan. The *Woodward* court rejected this "portable tort" theory.

Plaintiffs in the case at bar claim jurisdiction pursuant to MCLA § 600.715 and MCLA § 600.711, as well as MCLA § 600.-705. Section 600.715 is the parallel provision to Section 600.705, as applied to foreign corporations which "do or cause any act to be done, or consequences to occur, in the state resulting in an action for tort." *Id.* § 600.715(2). This basis for jurisdiction is easily rejected by analogy to *Woodward*.

However, *Woodward*'s application to Section 600.711, Michigan's general jurisdiction statute, is not as readily apparent. Section 600.711 authorizes the exercise of jurisdiction over a foreign corporation that conducts a "continuous and systematic part of its general business within the state."

*Id.* § 600.711(3). The issue of general jurisdiction was not before the *Woodward* court. Yet the following passage suggests that fidelity to the principles expressed in *Woodward* requires that its standard be extended to the analysis of general jurisdiction:

> Where foreign professionals consciously solicit Michigan business, this state's interest in the availability of out-of-state professional services is not jeopardized since the foreign professionals will have already decided that the benefits of increased revenues from Michiganians offset the potential exposure to suit in Michigan. Should these professionals decide to cease solicitation of Michigan residents, they need not turn away *unsolicited* Michigan business because the holding in the present case stands as a bar to their being sued in Michigan.

*Woodward,* 79 Mich.App. at 549, n. 2, 261 N.W.2d 80 (emphasis in original). Therefore, until the state courts issue further guidance on the issue, this court will extend the *Woodward* holding to the analysis of general jurisdiction.

As a result, when a Michigan resident sues an out-of-state doctor, the *Helicopteros* analysis of "continuous and systematic" contacts which may or may not be related to the controversy is irrelevant to the issue of general personal jurisdiction. Instead, in compliance with *Woodward,* this court must inquire whether Michigan residents are "encouraged on a systematic or continuing basis to utilize professional facilities outside of Michigan." This standard is particularly apt to medical providers which operate near the state line. The Court interprets the *Woodward* test as an attempt to distinguish two categories of business. The first is a result of being near state borders. The second is that business which is attributable to a doctor or institution's active enticement of Michigan residents to forego the services of Michigan doctors and cross the state line. It is the second type of activity which creates general jurisdiction over out-of-state medical providers.

*Application of the Standard*

Plaintiffs make much of the fact that the northwestern region of Indiana and the southwestern region of Michigan are an integrated community for business purposes. The name of one defendant, Michiana Community Hospital, is indicative of this fact. However, for purposes of federal diversity jurisdiction, the state line between Indiana and Michigan remains distinct.

The primary significance of the geographical proximity of the two areas is that it may lead Indiana defendants to have a significant number of contacts with the State of Michigan. For example, defendant Michiana Community Hospital employed fifty-two Michigan residents in 1989. During a ten-month period in 1991–92, the hospital received 2,259 hospital visits by patients with Michigan addresses, and the gross amount of billings for that time period which are attributable to Michigan residents was $2,503,000. This dollar amount includes approximately $157,000 of billings to the Michigan Medicaid program.

Ordinarily, such contacts would be highly relevant to this Court's analysis of general jurisdiction. However, as explained above, this character of interaction with the forum state cannot create personal jurisdiction, regardless of its volume. Systematic and continuous encouragement of Michigan residents is required.

In this case, the only conduct of any defendant which could be fairly categorized as "encouraging" Michigan residents to come to Indiana are phone book listings. Defendant Niles placed a listing in the 1989–90, 1990–91, and 1991–92 editions of the Niles–Buchanan area yellow pages. Dr. Niles' listing is printed in the smallest variety of typeface which appears on the page. It is not listed in boldface type, as are many of the listings of other doctors on the page. Further, he did not take out a separate advertisement on the page, as some other doctors did.

There is *no evidence* that defendant Orthopedic Services of South Bend advertised in Michigan or possessed a phone listing.

Defendant Michiana Community Hospital avers that it had no advertisements in pub-

lications circulated in Michigan in 1989, the year of Ms. Horvath's surgery. The hospital listed its address and telephone number in the 1989, 1990 and 1991 editions of the Buchanan/Galien/Niles area Ameritech Pages Plus, and the Dowagiac/Cassopolis/Edwardsburg/Sister Lakes/Union/Vandalia GTE Yellow Pages. These listings were not accompanied by an advertisement.

■ This Court holds that a simple and innocuous listing in a Michigan phone book, without more, does not rise to the level of systematic and continuous encouragement of Michigan residents to seek services in Indiana. This is particularly true when regions on the border between two states share a "twin city" status.

Other courts have reached a similar conclusion. *Kennedy v. Ziesmann,* 526 F.Supp. 1328 (E.D.Ky.1981), considered the malpractice claim of a Kentucky resident who sued a doctor who practiced in Cincinnati, Ohio, just across the river from Kentucky. In contrast to the Michigan long-arm statute, the Kentucky long-arm statute under consideration was co-extensive with the Due Process Clause. Nevertheless, the court found that listings in telephone directories circulated in Kentucky were not sufficient contacts to satisfy the "purposefully availing" element of Kentucky's long-arm statute.

In reaching its conclusion, the *Kennedy* court relied on *Russell v. Bennett,* (S.D.Ind. NO. IP 81–353–C) (unpublished), which rejected the argument that personal jurisdiction over a Ohio physician could be based on the fact that adjoining areas of northern Ohio and southern Indiana were one economic area with a common telephone directory. *See also Jackson v. Wileman,* 468 F.Supp. 822 (W.D.Ky.1979); *Charlie Fowler Evangelistic Assn. v. Cessna Aircraft Co.,* 911 F.2d 1564 (11th Cir. 1990) (basic listings in regional telephone directory are insufficient to provide contacts which comport with due process).

Plaintiffs rely on *Cubbage v. Merchent,* 744 F.2d 665 (9th Cir.1984), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985), which was cited and distinguished by the Sixth Circuit in *Rann, su-*

*pra.* In *Cubbage,* the court based a determination that an Arizona hospital had purposefully availed itself of the privilege of conducting activities in California on, in part, the fact that it had a listing in the white and yellow pages of a California phone book, as well as a yellow pages advertisement.

There are three important factors which distinguish *Cubbage* from the case at bar. First, the Arizona hospital maintained an advertisement which showed the hospital's logo and name in bold print, and read: "24 HOUR EMERGENCY; PHYSICIAN ALWAYS ON DUTY; ACCREDITED ACUTE HOSPITAL; FULL SERVICES; MEDICAL AND SURGICAL." *Cubbage* at 669. Second, the California long-arm statute under consideration was coextensive with the Due Process Clause, *Cubbage* at 667; Michigan's, in this circumstance, is not. Third, the *Cubbage* court's view of the policy ramifications of its choice is inconsistent with that of the Michigan courts:

> There is no evidence in the record suggesting that subjecting appellees to the jurisdiction of California courts will produce a 'chilling effect' on appellees in treating California patients. Appellees have not made any showing that they would not treat California patients for fear of being haled before a California court, or that their insurance rates would increase as a result.

*Cubbage* at 669–670. In contrast, one element which supported the conclusion of the Michigan court which decided *Woodward* was a concern about the ability of Michigan residents to easily obtain out-of-state medical care. *Woodward,* 79 Mich.App. at 547, 261 N.W.2d 80. This court is obligated to reflect the policies of the Michigan courts on this matter. Several states have shared Michigan's concerns and conclusions on the point. *See, e.g. Kennedy v. Ziesmann,* 526 F.Supp. 1328, 1331–32 (E.D.Ky.1981); *Gelineau v. New York University Hospital,* 375 F.Supp. 661 (D.N.J.1974); *Lemke v. St. Margaret Hospital,* 552 F.Supp. 833, 837 (N.D.Ill.1982); *Hume v. Durwood Medical Clinic, Inc.,* 282 S.C. 236, 318 S.E.2d 119 at

122 (App.1984), *cert. denied*, 474 U.S. 848, 106 S.Ct. 141, 88 L.Ed.2d 117 (1985).

Finally, it should be noted that plaintiffs' complaint does not assert that their claim arises out of defendants' contact with Michigan. Defendants' motions assert that although Dr. Niles has a listing in a local Michigan telephone directory, Ms. Horvath did not come to be treated by him through that contact with Michigan. Instead, Defendants allege, Ms. Horvath was treated and referred by her general practitioner, Dr. Hellman, in Mishawaka, Indiana. Defendants' allegations are uncontroverted by plaintiffs' answer. Therefore, I find that the controversy did not arise from defendants' contacts with the forum.

Therefore, for the reasons stated above, I will enter an order dismissing plaintiffs' complaint for lack of personal jurisdiction.

## JUDGMENT

In accordance with the Opinion entered this date;

IT IS HEREBY ORDERED that defendant Michiana Community Hospital's motion to dismiss for lack of personal jurisdiction, dated February 5, 1992 (dkt. # 22), is GRANTED;

IT IS FURTHER ORDERED that defendants Niles and Orthopedic Services of South Bend's motion to dismiss for lack of personal jurisdiction, dated January 21, 1992 (dkt. # 17), is GRANTED;

IT IS FURTHER ORDERED that defendants Niles and Orthopedic Services of South Bend's motion to dismiss for lack of subject matter jurisdiction, dated January 21, 1992 (dkt. # 17), is DENIED;

IT IS FURTHER ORDERED that the granting of the defendants' motion to dismiss requires this Court to DISMISS this action in its entirety.